IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-115

 No. 292A20

 Filed 24 September 2021

 STATE OF NORTH CAROLINA

 v.
 DONALD EUGENE HILTON

 Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of

 the Court of Appeals, 271 N.C. App. 505, 845 S.E.2d 81 (2020), affirming in part,

 reversing in part, and remanding an order entered on 10 May 2018 by Judge Daniel

 A. Kuehnert in Superior Court, Catawba County. On 23 September 2020, the

 Supreme Court allowed defendant’s petition for discretionary review as to additional

 issues and the State’s petition for discretionary review. Heard in the Supreme Court

 on 17 May 2021.

 Joshua H. Stein, Attorney General, by Joseph Finarelli, Special Deputy
 Attorney General, for the State-appellee.

 Glenn Gerding, Appellate Defender, by Nicholas C. Woomer-Deters, Assistant
 Appellate Defender, and James R. Grant, Assistant Appellate Defender, for
 defendant-appellant.

 NEWBY, Chief Justice.

¶1 The Supreme Court of the United States held that North Carolina’s satellite-

 based monitoring (SBM) program effects a Fourth Amendment search. As such, the

 imposition of SBM on a limited category of sex offenders is constitutional so long as
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 it is reasonable. “The reasonableness of a search depends on the totality of the

 circumstances, including the nature and purpose of the search and the extent to

 which the search intrudes upon reasonable privacy expectations.” Grady v. North

 Carolina (Grady I), 575 U.S. 306, 310, 135 S. Ct. 1368, 1371 (2015) (per curiam). The

 Fourth Amendment reasonableness test requires balancing significant competing

 interests: the State’s interest in protecting children and others from sexual abuse and

 a convicted sex offender’s right to privacy from government monitoring.

¶2 Upon remand from the Supreme Court’s Grady I order, this Court held the

 SBM program to be unconstitutional as applied to the narrow category of individuals

 “who are subject to mandatory lifetime SBM based solely on their status as a

 statutorily defined ‘recidivist’ who have completed their prison sentences and are no

 longer supervised by the State through probation, parole, or post-release

 supervision.” State v. Grady (Grady III), 372 N.C. 509, 522, 831 S.E.2d 542, 553 (2019)

 (footnote omitted). Our Grady III decision, however, left unanswered the question of

 whether the SBM program is constitutional as applied to sex offenders who are in

 categories other than that of recidivists who are no longer under State supervision.

¶3 Defendant here is not a member of the category contemplated in Grady III.

 Rather, he falls into the aggravated offender category, which consists of defendants

 who are subject to SBM due to their conviction of at least one statutorily defined

 “aggravated offense.” A limited number of very serious sexual offenses such as rape
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 are categorized as aggravated. Defendant’s crime being one of the most serious sex

 offenses impacts our weighing of the reasonableness factors, including society’s

 interest in protecting its most vulnerable members and the expectation of privacy

 that society recognizes as legitimate. As such, the task here is to determine whether

 the SBM program1 is constitutional as applied to aggravated offenders.

¶4 For guidance, the Supreme Court has provided two examples for conducting

 the Fourth Amendment reasonableness test in the context of categorical searches.

 Grady I, 575 U.S. at 310, 135 S. Ct. at 1371 (citing Samson v. California, 547 U.S.

 843, 857, 126 S. Ct. 2193, 2202 (2006) (suspicionless search of parolee was

 reasonable); Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 664–65, 115 S. Ct. 2386,

 2396 (1995) (random drug testing of student athletes was reasonable)). Having

 conducted the reasonableness analysis in light of Samson, Vernonia, and our prior

 decision in Grady III, we conclude that searches effected by the imposition of lifetime

 SBM upon aggravated offenders are reasonable. We also conclude that the SBM

 program does not violate Article I, Section 20 of the North Carolina Constitution. The

 trial court’s order imposing lifetime SBM based upon defendant’s status as an

 aggravated offender thus complies with the Fourth Amendment and Article I, Section

 1 The General Assembly recently amended the SBM program. See Act of Sep. 2, 2021,

 S.L. 2021-138, § 18, https://www.ncleg.gov/Sessions/2021/Bills/Senate/PDF/S300v8.pdf. The
 relevant amendments, however, do not become effective until 1 December 2021. See id.
 § 18.(p). Therefore, the version of the SBM program in effect on the date of the trial court’s
 SBM order governs the present case.
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 20. Accordingly, we (1) modify and affirm the portion of the decision of the Court of

 Appeals which upheld the imposition of SBM during post-release supervision and (2)

 reverse the portion of the decision which held the imposition of post-supervision SBM

 to be an unreasonable search. Therefore, the trial court’s SBM order is reinstated.

 I. Facts and Procedural History

¶5 During an interview with a criminal investigator on 8 June 2005, defendant

 admitted to having sexual intercourse with one minor child and sexual contact with

 another while a third minor child watched. On 5 July 2005, defendant was charged

 with first-degree statutory rape and first-degree statutory sexual offense. On 26 April

 2007, he pled guilty to the charges and received a sentence of 144 to 182 months.

 Defendant was released from prison on 9 July 2017 and placed on post-release

 supervision for a period of five years. Defendant’s post-release supervision terms

 prohibited him from leaving Catawba County without first obtaining approval from

 his probation officer. Defendant, however, traveled to Caldwell County on several

 occasions without his probation officer’s consent. While in Caldwell County,

 defendant sexually assaulted his minor niece. As a result, defendant was charged in

 Caldwell County with taking indecent liberties with a child.2

¶6 The trial court in Catawba County conducted a hearing on 19 April 2018 and

 2 Subsequent to the SBM order in this case, defendant was convicted of this indecent

 liberties charge.
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

10 May 2018 to determine whether defendant should be enrolled in SBM based upon

his 2007 convictions. Finding that defendant “[fell] into at least one of the categories

requiring [SBM] under [N.C.]G.S. [§] 14-208.40, in that . . . the offense of which . . .

defendant was convicted was an aggravated offense,” the trial court ordered

defendant to enroll in lifetime SBM. In support of its order, the trial court made the

following additional findings:

 l. That the defendant admitted to sexually assaulting more
 than one minor child prior to being convicted of first degree
 rape and first degree sexual offense.

 2. That the defendant [completed his prison sentence] for
 the crimes of first degree rape and first degree sexual
 offense[.]

 3. That probable cause has been found to currently charge
 the defendant with the crime of taking indecent liberties
 with a minor.

 4. That the defendant was charged with this crime just a
 couple months after being released from custody from
 serving his sentence for the crimes of first degree rape and
 first degree sexual offense.

 5. That the alleged victim in the pending charge is related
 to one of the victim’s [sic] associated with the defendant’s
 previous convictions of first degree rape and first degree
 sexual assault.

 6. That the defendant has been monitored by probation and
 parole since his release from prison on July 9, 2017.

 7. That one of the conditions of defendant’s post release
 supervision is not to leave Catawba County without the
 permission of his probation/parole officer.
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 8. That the defendant has violated this condition of post
 release supervision and has traveled to Caldwell County
 without the knowledge of probation and parole.

 9. That defendant’s current charge of taking indecent
 liberties with a minor is out of Caldwell County were [sic]
 the alleged victim lives.

 10. That the [SBM] program in Catawba County utilizes an
 ankle monitoring device to detect the location of one subject
 to [SBM] through Global Positioning System.

 11. That the ankle monitoring device is light weight, small
 in size, can be adjusted for comfort and is of little intrusion
 to the person wearing the device.

 12. That the monitoring of this device is done by authorized
 personnel from probation and parole that are assigned to
 monitor a particular person subject to [SBM].

 13. That there are safe guards [sic] in place to protect a
 person subject to [SBM] in the case of an emergency or
 malfunction of the equipment.

 14. That there are no known circumstances regarding this
 defendant that would cause a unique concern about his
 ability to wear the ankle monitoring device whether it be
 physical health, mental health, the defendant’s occupation,
 the defendant’s leisure or otherwise.

 15. That there does not currently exist any other way for
 probation and parole to utilize [SBM] other than the
 current practice of using an ankle bracelet.

 16. That there does not exist currently any other form of
 monitoring available to probation and[ ]parole other than
 physical monitoring similar to what is understood as
 supervised probation and [SBM] as described above.

Based upon these findings, the trial court concluded that, under the totality of the
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 circumstances, the SBM program is constitutionally reasonable as applied to

 defendant. Defendant appealed.

¶7 Before the Court of Appeals, defendant argued: (1) the trial court exceeded its

 constitutional authority because the SBM order effected an unreasonable search; (2)

 the SBM statute is facially unconstitutional due to the State’s failure to demonstrate

 that the program serves a legitimate government interest; and (3) orders authorizing

 SBM pursuant to the program constitute “general warrants” in violation of Article I,

 Section 20 of the North Carolina Constitution. That court issued a divided decision

 where it affirmed in part, reversed in part, and remanded to the trial court. State v.

 Hilton, 271 N.C. App. 505, 514, 845 S.E.2d 81, 88 (2020). The Court of Appeals noted

 that under Grady I the constitutionality of an SBM order depends on whether it is

 reasonable “based on the ‘totality of the circumstances.’ ” Id. at 509, 845 S.E.2d at 85

 (quoting Grady I, 575 U.S. at 310, 135 S. Ct. at 1371). It also recognized that a

 reviewing court should “consider, among other things, ‘the nature and purpose of the

 search’ and ‘the extent to which the search intrudes upon reasonable expectations of

 privacy.’ ” Id. (quoting Grady I, 575 U.S. at 310, 135 S. Ct. at 1371).

¶8 The Court of Appeals then considered this Court’s holding in Grady III and

 opined:

 Though the holding was limited to a subset of
 unsupervised, convicted sex offenders, the Grady [III]
 holding appears to impose a high standard on the State to
 meet in order to show reasonableness when imposing SBM
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 on any convicted sex offender who is not under any form of
 State supervision, mainly because of the high burden of
 showing the efficacy of SBM in helping solve future crimes.

 In its analysis, though, our Supreme Court
 recognized that the calculus of reasonableness is different
 when a defendant is subject to State supervision. For
 instance, in the Conclusion section, the Court emphasized
 that its holding does not enjoin all of the SBM program’s
 applications, in part, “because this provision is still
 enforceable against a [sex offender] during the period of his
 or her State supervision[.]”

 Id. (second and third alterations in original) (citations omitted) (quoting Grady III,

 372 N.C. at 546, 831 S.E.2d at 570). As such, the Court of Appeals held that based on

 Grady III, “the trial court’s imposition of SBM on [d]efendant for any period beyond

 his period of post-release supervision is unreasonable.” Id. at 510, 845 S.E.2d at 85.

¶9 The Court of Appeals, however, then noted that “the expectation of privacy for

 a defendant who is still under a form of State supervision is extremely low.” Id. at

 510, 845 S.E.2d at 86 (citing Grady III, 372 N.C. at 533, 831 S.E.2d at 561). According

 to that court, “[w]hile the intrusion [upon defendant’s reasonable expectation of

 privacy] is great, . . . it is not as great as in Grady [III]” because “the imposition [here]

 is only for the remainder of the period that [d]efendant is subject to supervision.” Id.

 at 511, 845 S.E.2d at 86. It also recognized that “there is a justification for SBM

 during [d]efendant’s post-release supervision period” in that it “help[s] law

 enforcement determine whether [d]efendant is violating the condition of his post-

 release supervision that he remain in Catawba County.” Id. The Court of Appeals
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 thus held that “the imposition of SBM during [d]efendant’s post-release supervision

 period is reasonable.” Id. at 510, 845 S.E.2d at 85.

¶ 10 Regarding defendant’s facial challenge to the SBM statute, the Court of

 Appeals noted that “[t]he General Assembly’s enactments are presumed to be

 constitutional.” Id. at 513, 845 S.E.2d at 88. In recognizing that the State’s interest

 in the SBM statute is “without question legitimate,” id. (quoting Grady III, 372 N.C.

 at 543, 831 S.E.2d at 568), the Court of Appeals held that the SBM statute “is facially

 valid, at least to the extent that it can be applied to defendants under State

 supervision,” id. Finally, the Court of Appeals addressed defendant’s general warrant

 argument and concluded that “the imposition of SBM on individuals who are

 otherwise under State post-release supervision does not violate our Constitution.” Id.

 at 514, 845 S.E.2d at 88. As such, the Court of Appeals affirmed the SBM order “to

 the extent that it imposes SBM on [d]efendant for the remainder of his post-release

 supervision,” reversed the SBM order “to the extent that [it] imposes SBM beyond

 [d]efendant’s period of post-release supervision,” and remanded for further

 proceedings. Id.

¶ 11 The dissent agreed with the Court of Appeals’ decision to reverse the SBM

 order to the extent that it imposed SBM beyond defendant’s post-release supervision

 period. Id. (Brook, J., concurring in the result in part and dissenting in part). The

 dissent, however, would have reversed the entire SBM order because “the State
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 introduced no evidence of the SBM program’s efficacy.” Id. at 527, 845 S.E.2d at 96.

 According to the dissent,

 the trial court made no findings of fact regarding the
 efficacy of the program in preventing or solving sex crimes.
 Nor did the State present any witnesses to testify that SBM
 is an effective law enforcement tool. As in Grady III, the
 State here presented no data or empirical studies to show
 that SBM is effective at preventing recidivism or deterring
 sex crimes. Nor did it request that the trial court take
 judicial notice of any studies or reports regarding the
 efficacy of SBM in reducing recidivism. The State also put
 forth no evidence regarding general recidivism rates of sex
 offenders to support the reasonableness of the intrusion.

 Id. at 527, 845 S.E.2d at 95–96. The dissent noted that the State’s “evidence of the

 likelihood of SBM to prevent [d]efendant’s own recidivism . . . does not provide the

 requisite evidence ‘regarding the actual efficacy of [the State’s] SBM program in

 preventing recidivism.’ ” Id. at 527–28, 845 S.E.2d at 96 (third alteration in original)

 (quoting State v. Anthony, 267 N.C. App. 45, 48, 831 S.E.2d 905, 907 (2019)). The

 dissent further opined that the State’s “interest in preventing defendants from

 absconding” is insufficient to justify imposing SBM. Id. at 529, 845 S.E.2d at 97. As

 such, the dissent would have held “that the absence of evidence supporting SBM’s

 efficacy in this instance means that the State cannot justify this significant lifetime

 intrusion on [d]efendant’s privacy interests.” Id. at 519, 845 S.E.2d at 91.

¶ 12 Defendant appealed to this Court based upon the dissenting opinion at the

 Court of Appeals. Additionally, this Court allowed (1) defendant’s petition for
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 discretionary review to address whether orders authorizing SBM are

 unconstitutional “general warrants” prohibited by Article I, Section 20 of the North

 Carolina Constitution and (2) the State’s petition for discretionary review to address

 whether the trial court properly determined that defendant was subject to lifetime

 SBM. We disagree with defendant’s contention that the SBM order effects an

 unreasonable search. Rather, we hold that a search effected by the imposition of

 lifetime SBM upon a defendant due to his status as an aggravated offender is

 reasonable under the Fourth Amendment. We also hold that the SBM program does

 not violate Article I, Section 20 because SBM orders do not constitute “general

 warrants.”

 II. Reasonableness Under the Fourth Amendment

¶ 13 We first address whether North Carolina’s SBM statute violates the Fourth

 Amendment by authorizing the imposition of lifetime SBM upon aggravated

 offenders. Enactments of the General Assembly are presumed to be constitutional.

 Grady III, 372 N.C. at 521–22, 831 S.E.2d at 553; see San Antonio Indep. Sch. Dist.

 v. Rodriguez, 411 U.S. 1, 60, 93 S. Ct. 1278, 1311 (1973) (recognizing “the basic

 presumption of the constitutional validity of a duly enacted state or federal law” as

 “one of the first principles of constitutional adjudication”). As such, “we will not

 declare a law invalid unless we determine that it is unconstitutional beyond

 reasonable doubt.” Grady III, 372 N.C. at 522, 831 S.E.2d at 553 (alteration omitted)
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 (quoting Cooper v. Berger, 370 N.C. 392, 413, 809 S.E.2d 98, 111 (2018)).

¶ 14 The Supreme Court has held that the imposition of SBM pursuant to North

 Carolina’s SBM program effects a Fourth Amendment search. Grady I, 575 U.S. at

 310, 135 S. Ct. at 1371. The Fourth Amendment protects “[t]he right of the people to

 be secure in their persons, houses, papers, and effects, against unreasonable searches

 and seizures” by the government. U.S. Const. amend. IV.

 The Fourth Amendment prohibits only unreasonable
 searches. The reasonableness of a search depends on the
 totality of the circumstances, including the nature and
 purpose of the search and the extent to which the search
 intrudes upon reasonable privacy expectations. See, e.g.,
 Samson v. California, 547 U.S. 843, 126 S. Ct. 2193, 165 L.
 Ed. 2d 250 (2006) (suspicionless search of parolee was
 reasonable); Vernonia School Dist. 47J v. Acton, 515 U.S.
 646, 115 S. Ct. 2386, 132 L. Ed. 2d 564 (1995) (random drug
 testing of student athletes was reasonable).

 Grady I, 575 U.S. at 310, 135 S. Ct. at 1371. “[W]e ‘examin[e] the totality of the

 circumstances’ to determine whether a search is reasonable within the meaning of

 the Fourth Amendment.” Samson, 547 U.S. at 848, 126 S. Ct. at 2197 (second

 alteration in original) (quoting United States v. Knights, 534 U.S. 112, 118, 122 S. Ct.

 587, 591 (2001)). This examination must consider the government’s purpose in

 conducting the search and the nature of the search balanced with the degree of

 intrusion upon the recognized privacy interest. See Grady I, 575 U.S. at 310, 135 S.

 Ct. at 1371; Grady III, 372 N.C. at 538, 831 S.E.2d at 564 (“The balancing analysis

 that we are called upon to conduct here requires us to weigh the extent of the
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 intrusion upon legitimate Fourth Amendment interests against the extent to which

 the SBM program sufficiently ‘promot[es] . . . legitimate governmental interests’ to

 justify the search, thus rendering it reasonable under the Fourth Amendment.”

 (alterations in original) (quoting Vernonia, 515 U.S. at 653, 115 S. Ct. at 2390)). In

 assessing reasonable expectations of privacy, “[t]he Fourth Amendment does not

 protect all subjective expectations of privacy, but only those that society recognizes

 as ‘legitimate.’ What expectations are legitimate varies, of course, with context.”

 Vernonia, 515 U.S. at 654, 115 S. Ct. at 2391 (citing and quoting New Jersey v. T.L.O.,

 469 U.S. 325, 337–38, 105 S. Ct. 733, 740–41 (1985)).

¶ 15 By citing Samson and Vernonia in Grady I, the Supreme Court provided an

 instructive framework for conducting the reasonableness balancing test to determine

 whether imposing SBM on a limited category of convicted sex offenders is valid. See

 Samson, 547 U.S. at 848, 126 S. Ct. at 2197; Vernonia, 515 U.S. at 652–53, 115 S. Ct.

 at 2390. In Samson the Supreme Court evaluated the reasonableness of a statute

 that required parolees to agree to any warrantless search, without cause, at any time.

 Samson, 547 U.S. at 846, 852–53 n.3, 126 S. Ct. at 2196, 2199–200 n.3. The Court

 began “by assessing, on the one hand, the degree to which it intrudes upon an

 individual’s privacy and, on the other, the degree to which it is needed for the

 promotion of legitimate governmental interests.” Id. at 848, 126 S. Ct. at 2197

 (quoting Knights, 534 U.S. at 118–19, 122 S. Ct. at 591). The Court first concluded
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 that parolees “have severely diminished expectations of privacy by virtue of their

 status alone.” Id. at 852, 126 S. Ct. at 2199. Viewing that diminished privacy

 expectation in the totality of the circumstances, the Supreme Court concluded the

 warrantless search did not intrude upon “an expectation of privacy that society would

 recognize as legitimate,” despite the unlimited breadth of the right to search and

 regardless of the crime. Id. Therefore, balancing no intrusion upon any reasonable

 expectation of privacy against the State’s substantial interests in deterring

 recidivism, the Court found the statute constitutional under the Fourth Amendment.

 Id. at 853, 857, 126 S. Ct. at 2200, 2202.

¶ 16 In Vernonia the Supreme Court applied the same balancing test for another

 categorical warrantless search “when special needs, beyond the normal need for law

 enforcement, ma[d]e the warrant . . . requirement impracticable.” Vernonia, 515 U.S.

 at 653, 115 S. Ct. at 2391 (quoting Griffin v. Wisconsin, 483 U.S. 868, 873, 107 S. Ct.

 3164, 3168 (1987)). A school policy required that high school athletes consent to

 random drug screenings in order to participate in school athletics. Id. at 650, 115 S.

 Ct. at 2389. The Court noted that the school had a special relationship with the

 students and that “[p]ublic school locker rooms [where the drug screenings take

 place] . . . are not notable for the [bodily] privacy they afford.” Id. at 655–57, 115 S.

 Ct. at 2391–93. As such, the Court determined that student athletes based on their

 status have diminished expectations of privacy. Id. at 657, 115 S. Ct. at 2392–93.
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 Next, the Court examined the intrusion upon privacy by the drug screening process

 and determined it had a “negligible” effect on a student athlete’s privacy interests.

 Id. at 658, 115 S. Ct. at 2393. The Court then noted that “a drug problem largely

 fueled by the ‘role model’ effect of athletes’ drug use, and of particular danger to

 athletes, is effectively addressed by making sure that athletes do not use drugs.” Id.

 at 663, 115 S. Ct. at 2395–96. Therefore, the State’s important interest in deterring

 drug use among all teenagers, particularly for the narrow, at-risk category of student

 athletes, justified the search under a Fourth Amendment reasonableness analysis.

 Id. at 661–62, 665, 115 S. Ct. at 2395, 2397.

¶ 17 In Grady III the trial court imposed SBM on the defendant solely due to his

 status as a recidivist even though he had completed his prison sentence and was no

 longer subject to post-release supervision at the time of the SBM order. Grady III,

 372 N.C. at 516, 522, 831 S.E.2d at 550, 553. In applying the Supreme Court’s Grady

 I order on remand, this Court conducted the Fourth Amendment reasonableness

 analysis with respect to the category in which the defendant fell—i.e., recidivists no

 longer subject to post-release supervision. Id. at 522, 831 S.E.2d at 553. This Court

 held the SBM program to be unconstitutional as applied to the narrow category of

 individuals “who are subject to mandatory lifetime SBM based solely on their status

 as a statutorily defined ‘recidivist’ who have completed their prison sentences and are

 no longer supervised by the State through probation, parole, or post-release
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 supervision.” Id. (footnote omitted).

¶ 18 Our Grady III holding specifically left unanswered the question of whether the

 SBM program is constitutional as applied to defendants who fall outside of the narrow

 category of recidivists who are no longer under State supervision. See id. (“We decline

 to address the application of SBM beyond [the specified] class of individuals.”). As

 such, we must now use the framework provided by the Supreme Court to determine

 the reasonableness of the General Assembly’s decision to impose SBM on the category

 of convicted sex offenders whose convictions arose from defined aggravated offenses.

¶ 19 The first step of our reasonableness inquiry under the totality of the

 circumstances requires analyzing the legitimacy of the State’s interest. Though the

 General Assembly has the authority to impose harsher prison sentences or lengthier

 parole times for convicted sex offenders, it chose to use an alternative civil remedy.

 Specifically, it enacted the SBM program as a civil, regulatory scheme to further its

 paramount interest in protecting the public—especially children—by monitoring

 certain sex offenders after their release. The General Assembly has “recognize[d] that

 sex offenders often pose a high risk of engaging in sex offenses even after being

 released from incarceration or commitment and that protection of the public from sex

 offenders is of paramount governmental interest.” N.C.G.S. § 14-208.5 (2019).3 “The

 3 In Grady III, we recognized that “N.C.G.S. § 14-208.5 is relevant to . . . the ‘nature

 and immediacy of’ the State’s concern in protecting the public from sex offenders.” Grady III,
 372 N.C. at 542, 831 S.E.2d at 567 (quoting Vernonia, 515 U.S. at 660, 115 S. Ct. at 2394).
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 General Assembly also recognize[d] . . . that the protection of [sexually abused]

 children is of great governmental interest.” Id. These findings are supported by

 Supreme Court precedent, congressional action, the public policy of the various

 states, and “the moral instincts of a decent people.” Packingham v. North Carolina,

 137 S. Ct. 1730, 1736 (2017); see 34 U.S.C. § 20981 (authorizing grants to states that

 implement twenty-four-hour, continuous GPS monitoring programs for sex

 offenders); Conn. Dep’t of Pub. Safety v. Doe, 538 U.S. 1, 4, 123 S. Ct. 1160, 1163

 (2003); Smith v. Doe, 538 U.S. 84, 89–90, 123 S. Ct. 1140, 1145 (2003).4

¶ 20 This Court’s precedent also supports the General Assembly’s findings

 regarding the dangers posed by the recidivist tendencies of sex offenders. Specifically,

 in Bryant, we stated that “[c]onvicted sex offenders ‘ “are a serious threat in this

 Nation. [T]he victims of sex assault are most often juveniles,” and “[w]hen convicted

 sex offenders reenter society, they are much more likely than any other type of

 offender to be rearrested for a new rape or sexual assault.” ’ ” State v. Bryant, 359

 4 When presented with conflicting evidence supporting the legislature’s public policy

 determinations, courts should defer to the legislature’s findings of fact, especially where, like
 here, that determination is corroborated. See Standley v. Town of Woodfin, 362 N.C. 328, 333,
 661 S.E.2d 728, 731 (2008) (deferring to the General Assembly’s finding “that sex offenders
 often pose a high risk of engaging in sex offenses even after being released from
 incarceration,” N.C.G.S. § 14-208.5, and concluding that a town’s concern in protecting
 children and others from convicted sex offenders was thus “founded on fact”); Redevelopment
 Comm’n of Greensboro v. Sec. Nat’l Bank of Greensboro, 252 N.C. 595, 611, 114 S.E.2d 688,
 700 (1960) (stating that legislative findings “are entitled to weight in construing [a] statute
 and in determining whether the statute promotes a public purpose or use under the
 Constitution”).
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 N.C. 554, 555, 614 S.E.2d 479, 480 (2005) (second and third alterations in original)

 (quoting Conn. Dep’t of Pub. Safety, 538 U.S. at 4, 123 S. Ct. at 1163 (quoting McKune

 v. Lile, 536 U.S. 24, 32–33, 122 S. Ct. 2017, 2024 (2002))). We later noted in Standley

 that “released sex offenders are four times more likely to be rearrested for subsequent

 sex crimes than other released offenders.” Standley v. Town of Woodfin, 362 N.C. 328,

 333, 661 S.E.2d 728, 731 (2008) (citing Patrick A. Langan, et al., U.S. Dep’t of Just.,

 Recidivism of Sex Offenders Released from Prison in 1994, at 1 (2003)).

¶ 21 Given the dangers posed by convicted sex offenders, we have recognized that

 “[p]rotecting children and other[s] . . . from sexual attacks is certainly a legitimate

 government interest.” Id. Most recently, we opined in Grady III that the State’s

 “interests [in protecting the public through SBM] are without question legitimate.”

 Grady III, 372 N.C. at 543, 831 S.E.2d at 568. There, however, our analysis applied

 only to the recidivist category. Id. at 522, 831 S.E.2d at 553. Notably, we made the

 following observation regarding the recidivist category:

 [l]ifetime monitoring for recidivists is mandated by our
 statute for anyone who is convicted of two sex offenses that
 carry a registration requirement. A wide range of different
 offenses are swept into this category. For example, a court
 is required to impose lifetime SBM on an offender who
 twice attempts to solicit a teen under the age of sixteen in
 an online chat room to meet with him, regardless of
 whether the person solicited was actually a teen or an
 undercover officer, or whether any meeting ever happened.

 Id. at 544, 831 S.E.2d at 568. Unlike the recidivist category, the aggravated offender
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 category applies only to a small subset of individuals who have committed the most

 heinous sex crimes. An individual can only receive aggravated offender status if he

 (i) engag[es] in a sexual act involving vaginal, anal, or oral
 penetration with a victim of any age through the use of
 force or the threat of serious violence; or (ii) engag[es] in a
 sexual act involving vaginal, anal, or oral penetration with
 a victim who is less than [twelve] years old.

 N.C.G.S. § 14-208.6(1a) (2019). When compared to the Grady III example of a

 recidivist with two convictions of attempted solicitation of a child by a computer, see

 id. § 14-202.3(a) (2019), it is clear that those who have committed statutorily defined

 aggravated offenses pose a much greater threat to society. As such, the State’s

 interest in protecting the public from aggravated offenders is paramount.

¶ 22 Further, the General Assembly has clearly stated the purpose of North

 Carolina’s “Sex Offender and Public Protection Registration Programs” is to

 proactively protect children and others from dangerous sex offenders:

 [T]he General Assembly recognizes that law enforcement
 officers’ efforts to protect communities, conduct
 investigations, and quickly apprehend offenders who
 commit sex offenses or certain offenses against minors are
 impaired by the lack of information available to law
 enforcement agencies about convicted offenders who live
 within the agency’s jurisdiction. . . .

 Therefore, it is the purpose of this Article to assist
 law enforcement agencies’ efforts to protect communities
 by requiring persons who are convicted of sex offenses or of
 certain other offenses committed against minors to register
 with law enforcement agencies, to require the exchange of
 relevant information about those offenders among law
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 enforcement agencies, and to authorize the access to
 necessary and relevant information about those offenders
 to others as provided in this Article.

 Id. § 14-208.5.

¶ 23 In furtherance of this purpose, the SBM program “uses a continuous [SBM]

 system” for narrowly defined categories of sex offenders who present a significant

 enough threat of reoffending to “require[ ] the highest possible level of supervision

 and monitoring.” Id. § 14-208.40(a) (2019). Under the statute, after our decision in

 Grady III,5 the three categories of offenders who require continuous lifetime SBM to

 protect public safety are (1) sexually violent predators, (2) aggravated offenders, and

 (3) adults convicted of statutory rape or a sex offense with a victim under the age of

 thirteen (adult-child offenders). Id. § 14-208.40A(c) (2019). A “sexually violent

 predator” is a person who “has been convicted of a sexually violent offense,” such as

 rape or incest, and “who suffers from a mental abnormality or personality disorder,”

 as determined by a board of experts, “that makes the person likely to engage in

 sexually violent offenses directed at strangers or at a person with whom a

 5 Grady III held lifetime SBM is unconstitutional as applied to defendants “who are

 subject to mandatory lifetime SBM based solely on their status as a statutorily defined
 ‘recidivist’ who have completed their prison sentences and are no longer supervised by the
 State through probation, parole, or post-release supervision.” Grady III, 372 N.C. at 522, 831
 S.E.2d at 553 (footnote omitted). We explicitly “decline[d] to address the application of SBM
 beyond this class of individuals” in Grady III. Id. As such, our analysis in that case has no
 bearing on cases where lifetime SBM is imposed on sexually violent offenders, aggravated
 offenders, or adult-child offenders.
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 relationship has been established or promoted for the primary purpose of

 victimization.” Id. §§ 14-208.6(5)–(6), -208.20 (2019). The second category comprises

 those who commit “aggravated offenses” defined as “engaging in a sexual act

 involving vaginal, anal, or oral penetration” either (1) through use or threat of force

 or (2) “with a victim who is less than [twelve] years old.” Id. § 14-208.6(1a). Here the

 trial court properly found that defendant falls within this aggravated offender

 category. The third category includes convictions of any sex act by a person over

 eighteen years old against any victim under thirteen years old. Id. §§ 14-27.23, -27.28

 (2019). If a trial court finds that an offender falls into one of these categories, the

 statute requires the court to “order the offender to enroll in a[n] [SBM] program for

 life.” Id. § 14-208.40A(c).

¶ 24 Though the program is commonly referred to as “lifetime” monitoring, one year

 after a defendant completes his sentence, probation, or parole, the defendant may

 petition the Post-Release Supervision and Parole Commission for termination of

 enrollment. Id. §§ 14-208.41(a), -208.43 (2019). Further, the SBM program is a “civil,

 regulatory scheme.” State v. Bowditch, 364 N.C. 335, 352, 700 S.E.2d 1, 13 (2010). As

 such, a defendant subject to SBM may petition “the court . . . [to] relieve [him] from

 a final . . . [SBM] order . . . for . . . [a]ny . . . reason justifying relief from the operation
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 of the [order].” N.C.G.S. § 1A-1, Rule 60(b)(6) (2019).6

¶ 25 Imposing lifetime SBM upon aggravated offenders serves the General

 Assembly’s stated purpose by assisting law enforcement agencies in solving crimes.

 For instance,

 [p]assive GPS data may place a sex offender at the scene of
 a crime, allowing an agency to identify potential suspects
 or witnesses. A sex offender’s alibi may be supported or
 discredited using GPS data. This information could assist
 law enforcement agencies with verifying sex offender
 registration information, such as residential or
 employment address, and locating noncompliant sex
 offenders and absconders. . . .

 Active GPS systems can assist law enforcement agencies in
 enforcing exclusion and inclusion zones. If an agency
 receives notification that an offender has entered an
 exclusionary zone, a quick response may prevent an
 offense. If the agency finds the sex offender near a school
 or playground, the officer on the scene can report this
 information to the offender’s probation or parole officer.

 Int’l Ass’n of Chiefs of Police, Tracking Sex Offenders with Electronic Monitoring

 Technology: Implications and Practical Uses for Law Enforcement 4 (2008).

¶ 26 Further, in a case pending before this Court, State v. Strudwick, No.

 334PA19-2, the State’s witness, a probation officer, testified concerning situations in

 which lifetime SBM would assist law enforcement in preventing and solving future

 6 The General Assembly’s recent amendments to the SBM statute become effective on

 1 December 2021. See Act of Sep. 2, 2021, S.L. 2021-138, § 18.(p). These changes may provide
 defendant with an additional avenue of relief. Id. § 18.(i).
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 crimes. The trial court in Strudwick found that “when a sexual assault is reported,

 location information from the monitor could be used to implicate the participant as a

 suspect if he was in the area of the sexual assault, or to eliminate him as a suspect if

 he was not in the area of a sexual assault.” We take judicial notice of this finding from

 Strudwick. See State ex rel. Swain v. Creasman, 260 N.C. 163, 164, 132 S.E.2d 304,

 305 (1963) (taking judicial notice of the Court’s own records). As such, we conclude

 that the SBM program assists law enforcement agencies in solving crimes.

¶ 27 SBM also serves the State’s interest in protecting the public from aggravated

 offenders by deterring recidivism. See Belleau v. Wall, 811 F.3d 929, 943 (7th Cir.

 2016) (“[I]t is undisputed that the [SBM] law promotes deterrence.”); accord Doe v.

 Bredesen, 507 F.3d 998, 1007 (6th Cir. 2007). SBM “deter[s] future offenses by making

 the [subject] aware that he is being monitored and is likely therefore to be

 apprehended should a sex crime be reported at a time, and a location, at which he is

 present.” Belleau, 811 F.3d at 935; see also Vernonia, 515 U.S. at 663, 115 S. Ct. at

 2395–96 (remarking that the “efficacy” of the search was “self-evident” where the goal

 was to deter drug use by athletes and the school promulgated the drug-testing policy

 so that athletes would know they would be tested); Skinner v. Ry. Lab. Execs.’ Ass’n,

 489 U.S. 602, 632, 109 S. Ct. 1402, 1421 (1989) (recognizing that drug tests “are

 highly effective means of . . . deterring the use of drugs”). Just as the drug-testing

 policy in Vernonia serves as an effective deterrent with respect to student athletes
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 categorically, the SBM program in the present case serves as an effective deterrent

 with respect to aggravated offenders categorically.

¶ 28 SBM’s efficacy as a deterrent is supported by empirical data. The National

 Institute of Justice sponsored a “research project examin[ing] the impact that GPS

 monitoring has on the recidivism rates of sex offenders in California.” Philip Bulman,

 Sex Offenders Monitored by GPS Found to Commit Fewer Crimes, 271 NIJ J. 22, 22

 (Feb. 2013). The study “found that those placed on GPS monitoring had significantly

 lower recidivism rates than those who received traditional supervision.” Id. In fact,

 offenders not placed on GPS monitoring “returned to custody at a rate 38 percent

 higher than [those placed on GPS monitoring].” Id. at 23. Similarly, a more recent

 study “examine[d] whether GPS is effective in terms of reducing violations for

 supervision conditions as well as new criminal behavior and returns to custody

 among” high risk sex offenders. Susan Turner, Alyssa W. Chamberlain, Jesse

 Jannetta & James Hess, Does GPS Improve Recidivism among High Risk Sex

 Offenders? Outcomes for California’s GPS Pilot for High Risk Sex Offender Parolees,

 Victims & Offenders: Int’l J. Evidence-based Rsch., Pol’y, and Prac., Jan. 2015, at 7.

 The study found that offenders not placed on GPS monitoring “were significantly

 more likely to be violated for new criminal behavior compared to GPS offenders

 (35.2% versus 19.1%[)].” Id. at 15. These studies demonstrate that SBM is efficacious

 in reducing recidivism. Since we have recognized the efficacy of SBM in assisting with
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 the apprehension of offenders and in deterring recidivism, there is no need for the

 State to prove SBM’s efficacy on an individualized basis.

¶ 29 Having found that the SBM program serves a legitimate government interest,

 we next consider the scope of the privacy interests involved. An aggravated offender’s

 expectation of privacy is severely diminished while he is subject to post-release

 supervision. See Samson, 547 U.S. at 844, 126 S. Ct. at 2195 (“An inmate electing to

 complete his sentence out of physical custody remains in the Department of

 Corrections’ legal custody for the remainder of his term and must comply with the

 terms and conditions of his parole. The extent and reach of those conditions

 demonstrate that parolees have severely diminished privacy expectations by virtue

 of their status alone.”); Grady III, 372 N.C. at 546, 831 S.E.2d at 570 (stating that the

 SBM statute is “still enforceable against a recidivist during the period of his or her

 State supervision”). At the SBM hearing, defendant’s counsel admitted that “[d]uring

 the time that [defendant] is out on parole . . . he has a lower expectation of privacy.

 He has [a] diminished expectation of privacy.” Defendant’s counsel thus conceded that

 SBM “would be appropriate” during defendant’s period of parole. Therefore, SBM is

 clearly constitutionally reasonable during a defendant’s post-release supervision

 period.

¶ 30 Though an aggravated offender regains some of his privacy interests upon the

 completion of his post-release supervision term, these interests remain impaired for
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

the remainder of his life due to his status as a convicted aggravated sex offender. “[I]t

is beyond dispute that convicted felons do not enjoy the same measure of

constitutional protections, including the expectation of privacy under the Fourth

Amendment, as do citizens who have not been convicted of a felony.” Bowditch, 364

N.C. at 349–50, 700 S.E.2d at 11 (citations omitted); see also Vernonia, 515 U.S. at

654, 115 S. Ct. at 2391 (“[T]he legitimacy of certain privacy expectations vis-à-vis the

State may depend upon the individual’s legal relationship with the State.”); Grady

III, 372 N.C. at 534, 831 S.E.2d at 561 (recognizing that “a person’s status as a

convicted sex offender may affect the extent to which the State can infringe upon

fundamental rights”). Convicted felons face a plethora of lifetime rights restrictions

including a reduction in liberty interests and Fourth Amendment privacy

expectations “that society recognizes as ‘legitimate.’ ” Vernonia, 515 U.S. at 654, 115

S. Ct. at 2391 (quoting T.L.O., 469 U.S. at 338, 105 S. Ct. at 741). For example, their

liberty interests are restricted regarding firearms possession. Cf. District of Columbia

v. Heller, 554 U.S. 570, 626, 128 S. Ct. 2783, 2816–17 (2008) (affirming that the

“longstanding prohibitions on the possession of firearms by felons” survive Second

Amendment scrutiny). Additionally, individuals convicted of sex offenses may be

permanently barred from certain occupations, a harsh sanction that limits them from

choosing where they work and what type of livelihood they may pursue. E.g.,

N.C.G.S. § 84-28(b)(1), (c) (2019) (attorney); id. § 90-14(a)(7), (c) (2019) (medical
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 doctor); id. § 93-12(9)(a) (2019) (certified public accountant); id. § 93A-6(b)(2) (2019)

 (real estate broker).

¶ 31 Sex offender registration requirements also manifest a diminished expectation

 of privacy. Cf. Smith, 538 U.S. at 89–90, 123 S. Ct. at 1145–46. For instance, a

 registrant is required to provide the following information to the public: “name, sex,

 address, physical description, picture, conviction date, offense for which registration

 was required, the sentence imposed as a result of the conviction, and registration

 status.” N.C.G.S. § 14-208.10(a) (2019). Since aggravated offenders are required to

 remain on the sex offender registry for life, see N.C.G.S. § 14-208.23 (2019), certain

 liberty, movement, and privacy restrictions apply even after the completion of any

 post-release supervision term. Specifically, aggravated offenders are perpetually

 inhibited by limitations on their movements and residency restrictions. See N.C.G.S.

 § 14-208.18(a)(1), (4) (2019) (prohibiting registered sex offenders from being present

 at “any place intended primarily for the use, care, or supervision of minors, including,

 but not limited to, schools, children’s museums, child care centers, nurseries, and

 playgrounds,” as well as the State Fair); Standley, 362 N.C. at 333, 661 S.E.2d at 732

 (upholding prohibition on convicted sex offenders entering public parks); N.C.G.S.

 § 14-208.16(a) (2019) (prohibiting registered sex offenders from “knowingly resid[ing]

 within 1,000 feet of the property on which any public or nonpublic school or child care
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 center is located”).7 Society therefore recognizes that aggravated offenders have

 restricted liberty interests and diminished privacy expectations for the entirety of

 their lives.

¶ 32 We lastly consider the level of intrusion effected by the imposition of lifetime

 SBM. Unlike punitive measures, SBM “does not impose a significant affirmative

 disability or restraint.” Belleau, 811 F.3d at 943. As the trial court found, “the ankle

 monitoring device is light weight, small in size, can be adjusted for comfort and is of

 little intrusion to the person wearing the device.” Specifically, the device is

 “approximately 2-inches wide” and “is the size of an 8-ounce coke can.” Charging the

 device takes approximately two hours per day. Further, the device does not hamper

 medical treatment because it can easily be removed by any medical provider in the

 event of an emergency. “The restraint imposed by these requirements is minimal and

 incidental to [SBM’s] actual purpose—tracking [the offender’s] whereabouts.” Id.

 “[A]s GPS devices become smaller and batteries last longer, any affirmative restraint

 imposed by [SBM] will, over time, become less and less burdensome.” Id. These

 physical limitations are more inconvenient than intrusive and do not materially

 7 The General Assembly recently amended N.C.G.S. § 14-208.16(a) to broaden its
 scope. See Act of Aug. 23, 2021, S.L. 2021-115, § 3,
 https://www.ncleg.gov/Sessions/2021/Bills/House/PDF/H84v4.pdf (prohibiting registered sex
 offenders from knowingly residing “within 1,000 feet of any property line of a property on
 which any public or nonpublic school or child care center is located” or “[w]ithin any structure,
 any portion of which is within 1,000 feet of any property line of a property on which any
 public or nonpublic school or child care center is located”).
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 invade an aggravated offender’s diminished privacy expectations.

¶ 33 Regarding the effect on other privacy interests, SBM falls on a spectrum of

 available “regulatory schemes that address the recidivist tendencies of convicted sex

 offenders.” Bowditch, 364 N.C. at 341, 700 S.E.2d at 6. At one end of the continuum,

 criminal sanctions—i.e., imprisonment, probation, and parole—and civil commitment

 involve a highly invasive affirmative restraint and deprivation of rights. See Kansas

 v. Hendricks, 521 U.S. 346, 363, 117 S. Ct. 2072, 2083 (1997); Belleau, 811 F.3d at

 932. Next, housing, career, and travel limitations significantly restrict the exercise of

 fundamental freedoms. Finally, on the other end of the spectrum, registration

 statutes impose the fewest restrictions on a defendant’s liberty and privacy, yet they

 still require the offender to provide certain personal information to law enforcement

 and the public. See N.C.G.S. § 14-208.10.

¶ 34 The privacy intrusion effected by SBM falls on the less intrusive side of the

 regulatory spectrum. See Belleau, 811 F.3d at 943 (noting that SBM “imposes as little

 burden as possible on the offender”). Similar to sex offender registration, SBM

 provides information to the State that is not ordinarily required for the general

 public, protects the public through deterrence, and allows for termination.

 Specifically, under the statute, a defendant may petition to be removed from SBM

 after one year. N.C.G.S. § 14-208.43 (permitting termination if a defendant shows he

 has not been convicted of any additional qualifying convictions, has substantially
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 complied with the SBM program, and “is not likely to pose a threat to the safety of

 others”). Since the SBM program is civil in nature, the North Carolina Rules of Civil

 Procedure govern. As such, a defendant may also seek removal of SBM through Rule

 60(b). Id. § 1A-1, Rule 60(b)(6) (“On motion and upon such terms as are just, the court

 may relieve a party . . . from a final judgment, order, or proceeding for . . . [a]ny . . .

 reason justifying relief from the operation of the judgment.”). These avenues for

 termination reduce the degree of intrusion caused by lifetime SBM.8

¶ 35 SBM also stands in stark contrast to the potential confinement measures that

 convicted sex offenders face. Unlike criminal imprisonment or civil commitment,

 “[t]he SBM program does not detain an offender in any significant way.” Bowditch,

 364 N.C. at 349, 700 S.E.2d at 11. Additionally, “[t]he monitoring taking place in the

 SBM program is far more passive and is distinguishable from the type of State

 supervision imposed on probationers.” Id. at 346, 700 S.E.2d at 9. While these

 alternative measures limit a sex offender’s liberty interests, SBM does not. For

 instance, SBM does not prevent a defendant from going anywhere he is otherwise

 allowed to go. See Belleau, 811 F.3d at 936 (“It’s untrue that ‘the GPS device burdens

 liberty . . . by its continuous surveillance of the offender’s activities’; it just identifies

 locations; it doesn’t reveal what the wearer of the device is doing at any of the

 locations.” (alteration in original) (quoting Commonwealth v. Cory, 454 Mass. 559,

 8 See footnote 6 of this opinion.
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 570, 911 N.E.2d 187, 196 (2009))). Where a defendant is unsupervised, no one

 regularly monitors the defendant’s location, significantly lessening the degree of

 intrusion. See id. at 941 (Flaum, J., concurring). “Occupational debarment is [also]

 far more harsh than an SBM program . . . .” Bowditch, 364 N.C. at 349, 700 S.E.2d at

 10; see also Bredesen, 507 F.3d at 1005 (citing Smith, 538 U.S. at 100, 123 S. Ct. at

 1151) (noting SBM is less harsh than occupational debarment). Therefore, SBM is

 significantly less intrusive than the harsher alternatives that convicted sex offenders

 face.9 Given the totality of the circumstances, SBM’s collection of information

 regarding physical location and movements effects only an incremental intrusion into

 an aggravated offender’s diminished expectation of privacy.

¶ 36 In sum, the State’s interest in protecting the public—especially children—from

 aggravated offenders is paramount. The SBM program furthers this interest by

 deterring recidivism and assisting law enforcement agencies in solving crimes.

 Further, an aggravated offender has a diminished expectation of privacy both during

 and after any period of post-release supervision as shown by the numerous lifetime

 restrictions that society imposes upon him. Lastly, the imposition of lifetime SBM

 causes only a limited intrusion into that diminished privacy expectation. Therefore,

 9 We in no way opine that SBM is a form of punishment. Rather, in looking at the full

 spectrum of potential State action, we highlight criminal imprisonment, civil commitment,
 probation, and occupational debarment to show that SBM is a less intrusive means of
 protecting the public from convicted sex offenders.
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 in light of the totality of the circumstances, the paramount government interest

 outweighs the additional intrusion upon an aggravated offender’s diminished privacy

 interests. As such, we hold that a search effected by the imposition of lifetime SBM

 on the category of aggravated offenders is reasonable under the Fourth Amendment.

 Therefore, the SBM statute as applied to aggravated offenders is not

 unconstitutional.

¶ 37 Here defendant was convicted of first-degree statutory rape and first-degree

 statutory sexual offense. These convictions qualify defendant as an aggravated

 offender under N.C.G.S. § 14-208.6(1a). The trial court thus appropriately ordered

 lifetime SBM pursuant to N.C.G.S. § 14-208.40A(c). “The touchstone of the Fourth

 Amendment is reasonableness, not individualized suspicion.” Samson, 547 U.S. at

 855 n.4, 126 S. Ct. at 2201 n.4. Further, this Court’s practice is to examine searches

 effected by the SBM statute categorically. See Grady III, 372 N.C. at 522, 831 S.E.2d

 at 553. Therefore, in light of our determination in the present case that searches

 effected by the imposition of lifetime SBM are reasonable as applied to the aggravated

 offender category, the trial court’s imposition of SBM in this case does not violate the

 Fourth Amendment.

 III. “General Warrant” Under Article I, Section 20

¶ 38 We next address whether the SBM program complies with Article I, Section 20
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

of the North Carolina Constitution.10 “The analytical framework for reviewing a facial

constitutional challenge is well-established.” Town of Boone v. State, 369 N.C. 126,

130, 794 S.E.2d 710, 714 (2016). “Our ‘State Constitution is in no matter a grant of

power,’ and as such, ‘[a]ll power which is not limited by the Constitution inheres in

the people, and an act of a State legislature is legal when the Constitution contains

no prohibition against it.’ ” Id. (alteration in original) (citations omitted) (quoting

Lassiter v. Northampton Cnty. Bd. of Elections, 248 N.C. 102, 112, 102 S.E.2d 853,

861 (1958), aff’d, 360 U.S. 45, 79 S. Ct. 985 (1959)). “We seldom uphold facial

challenges because it is the role of the legislature, rather than this Court, to balance

disparate interests and find a workable compromise among them.” Id. (quoting

Beaufort Cnty. Bd. of Educ. v. Beaufort Cnty. Bd. of Comm’rs, 363 N.C. 500, 502, 681

S.E.2d 278, 280 (2009)). Thus, we will only declare an act of the General Assembly to

be unconstitutional when “it [is] plainly and clearly the case” and “its

unconstitutionality [is] demonstrated beyond reasonable doubt.” Id. (first alteration

in original) (first quoting State ex rel. Martin v. Preston, 325 N.C. 438, 449, 385 S.E.2d

473, 478 (1989), then citing Baker v. Martin, 330 N.C. 331, 334–35, 410 S.E.2d 887,

 10 Defendant asks this Court to “declare the SBM procedures codified in [the statute]

facially unconstitutional because they authorize the issuance of orders which are
indistinguishable from, and tantamount to, . . . ‘general warrants.’ ”
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 889 (1991)).

¶ 39 Article I, Section 20 provides that “[g]eneral warrants, whereby any officer or

 other person may be commanded to search suspected places without evidence of the

 act committed, or to seize any person or persons not named, whose offense is not

 particularly described and supported by evidence, are dangerous to liberty and shall

 not be granted.”11 N.C. Const. art. I, § 20. “Both the state and the U.S. constitutions

 prohibit general warrants, but only the state constitution defines them as such:

 warrants that are not supported by evidence and that do not name names.” John V.

 Orth & Paul Martin Newby, The North Carolina State Constitution 73 (2d ed. 2013).

 “Drawn originally from a section of the Virginia Declaration of Rights, the ban on

 general warrants reflects colonial experience with abuses of the procedures of

 criminal investigation by the authorities.” Id. (citing Va. Const. of 1776, Declaration

 of Rights § 10). “Vivid in the memory of the newly independent Americans were those

 general warrants known as writs of assistance12 under which . . . . customs officials

 11 The language of Article I, Section 20 is nearly identical to that in North Carolina’s

 original Constitution. See N.C. Const. of 1776, Declaration of Rights § XI (“That General
 Warrants whereby any Officer or Messenger may be commanded to search suspected Places,
 without Evidence of the Fact committed, or to seize any Person or Persons not named, whose
 offence is not particularly described and supported by Evidence, are dangerous to Liberty,
 and ought not to be granted.”).
 12 These writs of assistance “received their name from the fact that they commanded

 all officers and subjects of the Crown to assist in their execution.” Nelson B. Lasson, The
 History and Development of the Fourth Amendment to the United States Constitution 53–54
 (1937).
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 [had] blanket authority to search where they pleased for goods imported in violation

 of the British tax laws.” Stanford v. Texas, 379 U.S. 476, 481, 85 S. Ct. 506, 510 (1965).

 “[T]he consistent and overarching themes in colonial judicial resistance to the writs

 was opposition to their unparticularized nature and to the unconstrained discretion

 they therefore afforded a searcher.” Fabio Arcila Jr., In the Trenches: Searches and

 the Misunderstood Common-Law History of Suspicion and Probable Cause, 10 U. Pa.

 J. Const. L. 1, 13 (2007) (emphases added).

 Courts and commentators condemned general warrants
 precisely because they lacked each of the protections
 afforded by specific warrants: a complainant’s swearing out
 of specific allegations, the complainant’s accountability for
 fruitless searches, a judge’s assessment of the grounds for
 the warrant, and—perhaps most importantly—clear
 directions to the officer as to whom to arrest or where to
 search.

 Thomas Y. Davies, Recovering the Original Fourth Amendment, 98 Mich. L. Rev. 547,

 655–57 (1999).

¶ 40 Unlike the writs of assistance seen during the founding era, orders imposing

 lifetime SBM adhere to a meticulous statutory procedure. Under the SBM program,

 a defendant is entitled to a hearing where the State must present evidence

 establishing how the defendant qualifies for SBM enrollment. N.C.G.S.

 § 14-208.40A(a). The defendant may then present evidence to refute the State’s

 presentation. Id. After hearing evidence from both parties, the trial court must make

 findings of fact for every category of eligibility under which the defendant qualifies.
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 Id. § 14-208.40A(b). The trial court must then order SBM depending on the

 defendant’s statutory category, each of which requires that the defendant be a

 convicted sex offender. Id. § 14-208.40A(c). These procedural protections are

 significantly more robust than the protections afforded by specific warrants.

¶ 41 Further, the scope of the search effected by an SBM order is not

 “indiscriminate.” Rather, the General Assembly has defined the limited scope of any

 such search:

 The [SBM] program shall use a system that provides all of
 the following:

 (1) Time-correlated and continuous tracking of the
 geographic location of the subject using a global positioning
 system based on satellite and other location tracking
 technology.

 (2) Reporting of subject’s violations of prescriptive and
 proscriptive schedule or location requirements. Frequency
 of reporting may range from once a day (passive) to near
 real-time (active).

 N.C.G.S. § 14-208.40(c). Thus, the State may only access a defendant’s physical

 location as recorded by the satellite monitoring device. Unlike general warrants and

 writs of assistance, the SBM program does not authorize State officials to

 indiscriminately search unidentified individuals for unspecified items and for an

 indefinite period of time without stated cause or constraint. Orders imposing SBM

 pursuant to the program thus do not constitute general warrants. Defendant has
 STATE V. HILTON

 2021-NCSC-115

 Opinion of the Court

 failed to demonstrate that the SBM program is unconstitutional beyond reasonable

 doubt. As such, we hold that the SBM order complies with Article I, Section 20.

 IV. Conclusion

¶ 42 A search arising from the SBM program for a limited category of aggravated

 offenders, given the totality of the circumstances, is reasonable under the Fourth

 Amendment. The purpose of the SBM program to protect the public from sex crimes

 is of paramount importance, and an aggravated offender’s reasonable expectation of

 privacy is significantly diminished. The incremental nature of a search providing

 location information and the method of data collection via an ankle bracelet are more

 inconvenient than intrusive. Moreover, the SBM program provides a particularized

 procedure for imposing SBM and thus does not violate Article I, Section 20.

 Accordingly, we modify and affirm the portion of the Court of Appeals’ decision which

 upheld the imposition of SBM during post-release supervision and reverse the portion

 of the decision which held the imposition of post-supervision SBM to be an

 unreasonable search. Therefore, we reinstate the trial court’s SBM order.

 MODIFIED AND AFFIRMED IN PART, REVERSED IN PART.
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 Justice EARLS dissenting.

¶ 43 The majority addresses a version of the satellite-based monitoring (SBM)

 statutes which, as of 2 September 2021, have been amended in ways that likely

 obviate at least some of the constitutional issues which form the basis of Mr. Hilton’s

 appeal. See Act of Sept. 2, 2021, S.L. 2021-138, § 18,

 https://www.ncleg.gov/Sessions/2021/Bills/Senate/PDF/S300v8.pdf. Although the

 majority acknowledges that the new law applies to Mr. Hilton, the majority fails to

 account for the fact that operation of its newly enacted provisions will afford Mr.

 Hilton the opportunity to have the order requiring him to enroll in SBM for life

 converted into an order requiring him to enroll in SBM for ten years. A decision which

 fails to examine the consequences of S.L. 2021-138 ignores the actual manner in

 which SBM will be applied to Mr. Hilton and thus has no relevance to future decisions

 interpreting the statutes governing the SBM program.

¶ 44 The proper course for a Court to follow when the General Assembly amends a

 statute while litigation involving the constitutionality of that statute is pending is, at

 a minimum, to permit further briefing on the impact of the amendments. Further

 briefing is necessary because when a statute is amended

 it is presumed that the legislature intended either (a) to
 change the substance of the original act, or (b) to clarify the
 meaning of it. 82 C.J.S. Statutes § 384, p. 897 (1953). The
 presumption is that the legislature “intended to change the
 original act by creating a new right or withdrawing any
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 existing one.” 1 Sutherland, Statutory Construction § 1930
 (Horack, 3d ed. 1943).

 Childers v. Parker's, Inc., 274 N.C. 256, 260 (1968). As the majority acknowledges,

 the new statutes provide Mr. Hilton with a new remedy. Thus, the opinion rendered

 by the Court today is only relevant for the few weeks remaining until the new law

 takes effect. Absent any exigent or urgent circumstances attendant to the parties in

 this case, the Court acts rashly, and without any apparent rationale or justification,

 in issuing an unnecessary opinion about a law the General Assembly has seen fit to

 change.

¶ 45 Even on its own terms, the majority’s soon-to-be-irrelevant conclusion that

 imposing lifetime SBM on Mr. Hilton is constitutional, based solely upon his status

 as having been convicted of an aggravated offense as defined under N.C.G.S. § 14-

 208.6(1a), without an assessment of his individual circumstances, and absent any

 evidence in the record indicating that lifetime SBM serves the State’s asserted

 interest, is patently incorrect. The majority reaches this conclusion only by flouting

 or mischaracterizing precedents from this Court and the United States Supreme

 Court and by disregarding the Fourth Amendment. Therefore, I dissent.

 I. Although Mr. Hilton is currently subject to an order requiring him to
 enroll in lifetime SBM, he will not be required to enroll in SBM for more
 than ten years.

¶ 46 In Grady III, this Court held unconstitutional the imposition of lifetime SBM

 as applied to “individuals who are subject to mandatory lifetime SBM based solely
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 upon their status as a statutorily defined ‘recidivist’ who have completed their prison

 sentences and are no longer supervised by the State through probation, parole, or

 post-release supervision.” State v. Grady (Grady III), 372 N.C. 509, 522 (2019)

 (footnote omitted). Although we “decline[d] to address the application of SBM beyond

 this class of individuals,” id., our examination of the Fourth Amendment and the

 contours of the SBM program plainly had implications for any individual subject to

 lifetime SBM pursuant to N.C.G.S. § 14-208.40. Every panel of the Court of Appeals

 confronted with a challenge to a lifetime SBM order—including challenges raised by

 individuals who fell outside the category of offenders addressed in Grady III—turned

 to Grady III for guidance. See, e.g., State v. Gordon, 270 N.C. App. 468, 469 (2020),

 review allowed, writ allowed, 853 S.E.2d 148 (N.C. 2021); State v. Jackson, No.

 COA18-1122, 2020 WL 2847885, at *15–18 (N.C. Ct. App. June 2, 2020)

 (unpublished), review denied, 375 N.C. 494 (2020); State v. Hutchens, 272 N.C. App.

 156, 160–61 (2020).1 The same Fourth Amendment and the same statutes obviously

 apply to any individual subject to SBM, whether he or she is an aggravated offender

 or a recidivist.

¶ 47 The General Assembly also recognized that Grady III cast doubt on the

 constitutionality of N.C.G.S. § 14-208.40 as applied to all categories of offenders

 1 A longer list of Court of Appeals decisions interpreting and applying Grady III to

 resolve the merits of an individual’s challenge to an SBM order can be found in Appendix I.
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 automatically made subject to lifetime SBM, not just recidivists. S.L. 2021-138, an

 omnibus criminal justice reform bill, is titled in relevant part “AN ACT TO . . .

 ADDRESS CONSTITUTIONAL ISSUES WITH SATELLITE-BASED

 MONITORING RAISED IN STATE VERSUS GRADY AND CREATE A PROCESS

 TO REVIEW WHETHER OFFENDERS SUBJECT TO THAT CASE WHICH WERE

 REMOVED FROM SATELLITE-BASED MONITORING ARE OTHERWISE

 ELIGIBLE.”2 The final version of S.L. 2021-138 which contains the provisions

 amending the SBM program was ratified by the Legislature on 25 August 2021—

 after oral argument was heard in this case—and signed by the Governor on 2

 September 2021. The Act becomes effective on 1 December 2021.

¶ 48 S.L. 2021-138 made changes to the SBM program which will be applicable to

 all individuals ordered to enroll in SBM on the basis of their status as among one of

 the categories of offenders singled out by N.C.G.S. § 14-208.40(a), including

 aggravated offenders similarly situated to Mr. Hilton, after the law becomes effective.

 Many of these changes directly respond to constitutional concerns identified by this

 Court in Grady III. Together, they render much of the majority’s reasoning

 unnecessary dicta.

 2 As we have noted, “even when the language of a statute is plain, ‘the title of an act

 should be considered in ascertaining the intent of the legislature.’ Smith Chapel Baptist
 Church v. City of Durham, 350 N.C. 805, 812, 517 S.E.2d 874, 879 (1999) (citing State ex rel.
 Cobey v. Simpson, 333 N.C. 81, 90, 423 S.E.2d 759, 764 (1992)).” Ray v. N.C. DOT, 366 N.C.
 1, 8 (2012).
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

¶ 49 First, the Act adds a new section, N.C.G.S. § 14-208.39, which for the first time

 provides some evidentiary basis for the State’s assertion that SBM effectively deters

 individuals convicted of sex offenses from committing further sex crimes. Id. at

 § 18.(a). Second, the Act amends N.C.G.S. § 14-208.40(a)(1) to impose SBM only upon

 certain categories of offenders, including aggravated offenders and recidivists3, who

 “based on the Division of Adult Correction and Juvenile Justice’s risk assessment

 program require[ ] the highest possible level of supervision and monitoring.” Id. at

 § 18.(c). Third, the Act amends N.C.G.S. § 14-208.40A to establish that an offender

 eligible for SBM pursuant to N.C.G.S. § 14-208.40(a)(1) shall be ordered to enroll in

 SBM for a period of ten years, rather than for life. Id. at § 18.(d).

¶ 50 Each of these changes significantly alters the legal terrain upon which the

 constitutionality of SBM as applied to individuals subject to SBM due to their status

 as aggravated offenders will be assessed going forward. Because the majority opinion

 addresses a version of the SBM program yet to incorporate these changes, our

 decision today has no relevance to the disposition of future legal challenges brought

 by any individual after S.L. 2021-138 takes effect on 1 December 2021.

¶ 51 However, because the majority’s opinion also ignores changes the General

 Assembly made to the SBM program which directly and unmistakably apply to

 3 S.L. 2021-138 uses the term “reoffender” instead of “recidivist.” For ease of reading,

 I continue to use the term “recidivist” throughout.
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 individuals ordered to enroll in lifetime SBM prior to the enactment of S.L. 2021-138,

 the majority opinion has little relevance as applied to Mr. Hilton, either.

¶ 52 S.L. 2021-138 adds a new section to Article 27A which provides that an

 offender like Mr. Hilton who is “enrolled in a satellite-based monitoring [program] for

 life may file a petition for termination or modification of the monitoring requirement

 with the superior court in the county where the conviction occurred five years after

 the date of initial enrollment.” Act of Sept. 2, S.L. 2021-138, § 18.(i) (to be codified at

 N.C.G.S. § 14-208.46(a)). Only two outcomes can result when an individual files such

 a petition. For individuals who have been enrolled in SBM for less than ten years,

 “the court shall order the petitioner to remain enrolled in the satellite-based

 monitoring program for a total of 10 years.” Id. (to be codified at N.C.G.S. § 14-

 208.46(d)). For individuals who have been enrolled in SBM for more than ten years,

 “the court shall order the petitioner’s requirement to enroll in the satellite-based

 monitoring program be terminated.” Id. (to be codified at N.C.G.S. § 14-208.46(e)).

 Thus, upon motion of any individual subject to an order requiring lifetime enrollment

 in SBM, the order requiring lifetime enrollment in SBM will be converted into an

 order requiring enrollment in SBM for a period of time not to exceed ten years.

¶ 53 Shortening the period of time an individual is required to enroll in SBM from

 life to ten years significantly diminishes the burden SBM places on an individual’s

 constitutional privacy interests. It reduces the likelihood that an individual will be
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 required to enroll in SBM for an extended period of time beyond his or her period of

 incarceration and post-release supervision. It also reduces the risk that technological

 advancements—or changes in an individual’s circumstances—will render the

 considerations justifying the initial imposition of SBM obsolete. The period of time

 Mr. Hilton would be subject to SBM was undoubtedly relevant to the Court of

 Appeals’ disposition of his appeal, which correctly distinguished between the period

 of time during which Mr. Hilton was under post-release supervision and the

 remainder of his life after completing the terms of his sentence. State v. Hilton, 271

 N.C. App. 505, 512–13 (2020) (“After [his] period of supervision, the imposition of

 SBM is no longer reasonable, as [Mr. Hilton’s] expectation of privacy is too high and

 the State’s legitimate purpose in monitoring [his] location . . . is extinguished.”). At a

 minimum, this Court should consider the changes implemented by S.L. 2021-138

 before resolving Mr. Hilton’s constitutional claims.

¶ 54 Consistent with the text, purpose, and structure of S.L. 2021-138, Mr. Hilton

 will be entitled to avail himself of the new procedural mechanism created by

 subsection 18.(i) of the Act. Subsection 18.(p) provides that “[s]ubsection (i) of this

 section becomes effective December 1, 2021, and applies to any individual required to

 enroll in satellite-based monitoring for life on or after that date.” As the statutes

 governing the SBM program make readily apparent, individuals like Mr. Hilton who

 were initially ordered to enroll in lifetime SBM prior to 1 December 2021 will be
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

“required to enroll” in SBM on 1 December 2021, 2 December 2021, and on every day

afterwards unless and until the initial order is modified or terminated.

 [W]hen an offender is required to enroll in satellite-based
 monitoring . . . the offender shall continue to be enrolled in
 the satellite-based monitoring program for the period
 required [ ] unless the requirement that the person enroll in
 a satellite-based monitoring program is terminated. . . . The
 offender shall cooperate with the Division of Adult
 Correction and Juvenile Justice and the requirements of
 the satellite-based monitoring program until the offender's
 requirement to enroll is terminated[.]”

N.C.G.S. § 14-208.42 (2019) (emphases added). Further, if individuals like Mr. Hilton

are not entitled to utilize the procedural mechanism created by subsection 18.(i) of

the Act, then nobody is. Subsection 18.(i) provides that “[a]n offender who is enrolled

in a satellite-based monitoring for life may file a petition for termination or

modification of the monitoring requirement . . . .” Id. at § 18.(i). However, after 1

December 2021, every court entering an SBM order must comply with the statutory

changes enacted by subsection 18.(d), which amends N.C.G.S. § 14-208.40A to require

a court to “order the offender to enroll in a [SBM] program for a period of 10 years.”

Id. at § 18.(d). To respect the legislature’s policy choice to afford offenders required to

enroll in lifetime SBM a process through which those orders will be modified or

terminated, individuals like Mr. Hilton who were previously ordered to enroll in

lifetime SBM must be able to utilize the procedural mechanism subsection 18.(i)
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 creates.4

¶ 55 The practical effect of S.L. 2021-138 is that no individual in North Carolina, no

 matter when they were initially ordered to participate in SBM, will be required to

 enroll in the program for life if they avail themselves of the process established by

 statute. Thus, the majority’s sweeping holding that “a search effected by the

 imposition of lifetime SBM upon a defendant due to his status as an aggravated

 offender is reasonable under the Fourth Amendment” does not address the

 circumstances of this case, or of any case that is likely to arise under North Carolina

 law. We lack authority and reason to construe a statute the legislature has chosen to

 amend. Cf. State v. McCluney, 280 N.C. 404, 407 (1972) (holding that “repeal of [the

 challenged statute] renders moot the question of its constitutionality”). Given the

 changes enacted by S.L. 2021-138, the majority opinion does no more than express

 the speculative view of four Justices that it would not offend the Fourth Amendment

 to require an individual to enroll in SBM for life based solely upon his or her status

 4 The final report summarizing S.B. 300 (now S.L. 2021-138) released by the General

 Assembly’s Legislative Analysis Division stated that the provisions amending the SBM
 program “to address constitutional issues” would “[r]educe lifetime SBM to ten years” and
 “[a]llow for a judicial review to terminate or modify SBM for offenders.” Legislative Analysis
 Division, 2021–22 N.C. Gen. Assemb., Bill Summary (Aug. 18, 2021),
 https://dashboard.ncleg.gov/api/Services/BillSummary/2021/S300-SMSA-67(e6)-v-
 2. Although not determinative, this “contemporaneous committee report[ ]” sheds further
 light on the “purpose of this specific part” of the broader Act, Est. of Savino v. Charlotte-
 Mecklenburg Hosp. Auth., 375 N.C. 288, 296 (2020), which is to ensure that no individual in
 North Carolina is required to enroll in SBM for life given the significant constitutional issues
 such a requirement creates.
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 as an aggravated offender. Under our precedents, that is not a function this Court is

 empowered to perform.

 II. The Fourth Amendment does not permit the State to impose lifetime
 SBM solely on the basis of an individual’s status as an aggravated
 offender.

¶ 56 For the reasons stated above, I do not believe it is necessary for the majority

 to opine on the constitutionality of subjecting Mr. Hilton to lifetime SBM when S.L.

 2021-138 will afford him the opportunity to seek and obtain an order reducing his

 required period of enrollment from life to ten years. However, because the majority

 chooses to reach this question, I also write to explain why its choice to reverse the

 decision of the Court of Appeals and leave the trial court’s SBM order undisturbed

 cannot be reconciled with the Fourth Amendment or with the precedent we

 established in Grady III.

 A. SBM is a “civil, regulatory scheme,” not a lesser “punishment.”

¶ 57 First, the majority justifies the imposition of lifetime SBM on Mr. Hilton as a

 lesser punishment than imprisonment. The implication is that because the

 alternative to an order imposing SBM is criminal imprisonment or civil commitment,

 the intrusion on Mr. Hilton’s privacy rights is minimal. Yet the order imposing SBM

 on Mr. Hilton is not restricted to Mr. Hilton’s period of incarceration and post-release

 supervision—the order imposes SBM for life, including any time remaining after he
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 has completed all of the terms of his sentence.5 The majority’s sweeping logic simply

 does not hold true under circumstances contemplated in the order itself.

¶ 58 More fundamentally, this Court held in State v. Bowditch, 364 N.C. 335 (2010),

 that North Carolina’s SBM program is a “civil, regulatory scheme” with a

 “nonpunitive” legislative intent. Id. at 342–44. Ignoring this holding, the majority

 adopts a “heads I win, tails you lose” approach. On the one hand, SBM (arguably) can

 be applied consistently with the constitutional prohibition against ex post facto laws

 because it is non-punitive. On the other hand, SBM (arguably) can be applied

 consistently with the Fourth Amendment’s protection against unreasonable searches

 and seizures because it is a lesser form of punishment. The State should not be

 afforded the opportunity to have its cake and eat it too. Having decided Bowditch,

 this Court should adhere to its conclusions about the SBM program’s purpose and

 effect. The SBM program cannot be justified as a substitute for a more intrusive form

 of criminal punishment because SBM is not a form of criminal punishment.

 B. The majority’s sweeping opinion is untethered to the facts.

¶ 59 Second, the majority goes far beyond the issue presented by the facts in this

 5 To reiterate, Mr. Hilton will not be required to enroll in SBM for life because of the

 changes to the SBM program contained in S.L. 2021-138. Additionally, as stated above,
 reducing the period of time an offender will be required to enroll in SBM from life to ten years
 has significant implications for our examination of SBM’s constitutionality as applied to Mr.
 Hilton or to any other similarly situated individual. However, for the purposes of illustrating
 the errors in the majority’s constitutional analysis, I adopt the majority’s premise that Mr.
 Hilton will be required to enroll in SBM for the remainder of his life.
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 case. The majority declares that any offender who has committed an aggravated

 offense may constitutionally be ordered to enroll in SBM for life, whether currently

 under state supervision or not. Yet Mr. Hilton’s present status as someone under the

 supervision of the Division of Adult Corrections has immense constitutional

 ramifications. Because he has not completed his sentence, Mr. Hilton arguably has a

 lesser privacy interest under the Fourth Amendment than someone who has

 completed his sentence and re-entered society. See Grady III, 372 N.C. at 533

 (“[T]here is no precedent for the proposition that persons . . . who have served their

 sentences and whose legal rights have been restored to them (with the exception of

 the right to possess firearms . . . nevertheless have a diminished expectation of

 privacy in their persons and in their physical locations at any and all times of the day

 or night for the rest of their lives.”). Mr. Hilton could also be required to participate

 in electronic monitoring as a condition of his post-release supervision independent of

 the sex-offender statute at issue here. See N.C.G.S. § 15A-1368.4(e)(13) (2019). He is

 not similarly situated to every aggravated offender subject to a lifetime SBM order.

 The majority errs in proceeding as if he is.

¶ 60 The majority repeatedly characterizes this Court’s opinion in Grady III as

 limited or narrow. This characterization is correct, to a point: the holding of Grady

 III was carefully tailored to the facts before the Court at that time, although it was

 not so limited or narrow as to have no applicability in any case involving an individual
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 who is not a recidivist. See Grady III, 372 N.C. at 545. Regardless, it is the majority’s

 (mis)characterization of Grady III as being so limited and so narrow that it has no

 applicability beyond the specific facts of that case which allows the majority to

 pretend a precedent we established in 2019 simply does not exist.

¶ 61 Yet, for some reason, the majority now feels completely unburdened by our

 longstanding norms of judicial modesty and by constitutional constraints on judicial

 power. Rather than issue an opinion limited to the category of offenders implicated

 by the facts of this case—aggravated offenders who are currently under State

 supervision and control—the majority feels entitled to opine on categories of

 individuals who differ from Mr. Hilton in constitutionally salient ways. Rather than

 wait for a case that presents the issue of whether SBM is constitutional as applied to

 an offender who is no longer subject to State supervision and control,6 the majority

 eagerly jumps at the chance to try to immunize a soon-to-be-outdated version of the

 SBM program from constitutional challenge in every conceivable circumstance. Our

 role as judges has traditionally meant avoiding broad, facial holdings when a narrow,

 case-specific one will suffice. See Kirkman v. Wilson, 328 N.C. 309, 312 (1991) (“The

 6 The majority rests heavily on the fact that because SBM is a civil judgment (except

 when it is not), a defendant who is subject to SBM but no longer subject to State supervision
 or control may move “the court . . . [to] relieve [him] from a final . . . [SBM] order . . . for . . .
 [a]ny . . . reason justifying relief from the operation of the judgment.” N.C.G.S. § 1A-1, Rule
 60(b)(6) (2019). Of course, it flips the Fourth Amendment on its head to affirm an order
 allowing the State to effectuate what may very well be an unconstitutional search on the
 promise that an individual could someday get back into court.
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 function of appellate courts . . . is not to give opinions on merely abstract or theoretical

 matters.” (alteration in original)). There is no justification for abandoning this rule

 in this case.

 C. The majority improperly excuses the State from its burden of
 demonstrating the efficacy of the SBM program.

¶ 62 Third, the majority’s Fourth Amendment analysis rests on factual conclusions

 it draws out of thin air. A warrantless search is only constitutional if it is reasonable.

 See, e.g., Riley v. California, 573 U.S. 373, 381–82 (2014). Reasonableness requires

 an examination of “the nature and purpose of the search and the extent to which the

 search intrudes upon reasonable privacy expectations.” Grady v. North Carolina, 575

 U.S. 306, 310 (2015) (per curiam). The Fourth Amendment places the burden on the

 State to prove that the search is reasonable, not on the individual being searched to

 prove that it is not. Grady III, 372 N.C. at 543 (“[T]he State bears the burden of

 proving the reasonableness of a warrantless search.”). If a search does not effectively

 advance the interest the State invokes to justify it, then it is hard to fathom how the

 search could be reasonable, no matter how weighty the State’s interest. Thus,

 adhering to United States Supreme Court precedent, we held in Grady III that we

 must “consider the nature and immediacy of the governmental concern at issue here,

 and the efficacy of this means for meeting it.” 372 N.C. at 538 (emphasis added)

 (quoting Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 660 (1995)).

¶ 63 It is undisputed that in this case, the State did not present any evidence to
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

support its assertion that imposing lifetime SBM deters sex offenders from

committing future sex crimes. In the face of that stark evidentiary void, the majority

is willing to lend a helping hand. According to the majority, “[t]he SBM program

furthers [the State’s asserted] interest by deterring recidivism and assisting law

enforcement agencies in solving crimes.” To be clear, there is not actually any

evidence in the record demonstrating the efficacy of SBM, either categorically or

specifically in this case. The empirical studies the majority relies upon were not

introduced by the State at Mr. Hilton’s initial SBM hearing. They were not even cited

by the State on appeal. Mr. Hilton did not have an opportunity to dispute the efficacy

of SBM by introducing his own studies or critiquing the ones the majority finds

persuasive. See, e.g., Crawford v. Marion Cty. Election Bd., 553 U.S. 181, 202 n.20

(2008) (“Supposition . . . is not an adequate substitute for admissible evidence subject
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 to cross-examination in constitutional adjudication.”).7 It is difficult to imagine a

 more glaring example of an “impermissible exercise of appellate factfinding,” In re

 Harris Teeter, LLC, 2021-NCSC-80, ¶ 34, than the majority making two studies the

 parties did not cite in any proceeding below the linchpin of its analysis.

¶ 64 In further support of its conclusion regarding the efficacy of SBM, the majority

 claims that “[j]ust as the drug-testing policy in Vernonia serves as an effective

 deterrent with respect to student athletes categorically, the SBM program in the

 present case serves as an effective deterrent with respect to aggravated offenders

 categorically.” This analogy does not hold up. The efficacy of a program for drug

 testing students is “self-evident” because the only thing the program needs to do is

 identify the presence or absence of drugs in a student’s system. See Vernonia, 515

 U.S. at 663. Provided that the tests are accurate, there is simply no disputing that a

 7 This Court specifically rejected the argument that the deterrence effect of SBM was

 self-evident in Grady III in part because the social science research available at the time that
 case was decided indicated that “applications of electronic monitoring as a tool for reducing
 crime are not supported by existing data.” State v. Grady (Grady III), 372 N.C. 509, 543 n. 20
 (2019) (quoting Deeanna M. Button et al., Using Electronic Monitoring to Supervise Sex
 Offenders: Legislative Patterns and Implications for Community Corrections Officers, 20
 Crim. Just. Pol’y Rev. 414, 418 (2009)). Further, the studies the majority relies upon in
 support of its conclusion that “SBM’s efficacy as a deterrent is supported by empirical data”
 both involved a California-specific program requiring intensive supervision of parolees. One
 of the studies found that the likelihood of a parolee violating the conditions of his or her
 parole or reoffending correlated significantly with a parole officer’s caseload, leading the
 researchers to recommend “smaller caseloads of no more than 20 people per officer.” Philip
 Bulman, Sex Offenders Monitored by GPS Found to Commit Fewer Crimes, 271 NIJ J. 22
 (Feb. 2013). This conflicting empirical data further undermine the majority’s assertion that
 the efficacy of lifetime SBM is “self-evident” and illustrate the need for these evidentiary
 issues to be addressed in the first instance by the trial court.
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 program which regularly subjects students to drug testing—and promises they will

 be punished if they test positive—serves the government’s interest in deterring

 student drug use.8

¶ 65 By contrast, the link between lifetime SBM and recidivism is far more complex.

 Even in this case, the most the State’s witness could offer was to answer in the

 affirmative when asked “hypothetically if the first time [Mr. Hilton] went to Caldwell

 County he had no contact with [the victim], then you possibly, if in fact an assault did

 occur, you might have been able to avoid that with satellite-based monitoring?”

 Lifetime enrollment in SBM “[h]ypothetically,” “possibly,” “might” have helped deter

 a crime allegedly committed by an aggravated offender still subject to post-release

 supervision. This is hardly the kind of ringing endorsement one would expect of a

 proposition the majority suggests is self-evident.

¶ 66 It may seem pedantic to hold the State to its burden of proving that the SBM

 program effectively deters sex offenders from committing future sex crimes, and

 maybe it would be, if the only interest implicated here was the State’s interest in

 8 Further, in Vernonia, the United States Supreme Court went out of its way to
 “caution against the assumption that suspicionless drug testing will readily pass
 constitutional muster in other contexts. The most significant element in this case is the first
 we discussed: that the Policy was undertaken in furtherance of the government’s
 responsibilities, under a public school system, as guardian and tutor of children entrusted to
 its care.” Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 665 (1995). The majority’s
 willingness to cherry-pick and expand Vernonia’s limited, context-specific holding—which
 involved very different circumstances and very different interests—stands in stark contrast
 to its disavowal of Grady III based upon its convenient view of that decision’s limits.
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 promoting public safety. After all, it certainly seems possible that strapping a plastic

 box to a person’s leg in order to collect location data in perpetuity will deter that

 person from committing future crimes. The problem with this view is that the State’s

 interest is not and cannot be the only interest that matters when evaluating the scope

 of protection afforded to North Carolinians under our state and federal constitutions.

¶ 67 When we allow the State to define for itself when a presumptively

 unreasonable search is reasonable, we place all North Carolinians’ constitutional

 rights at risk. After all, the Fourth Amendment safeguards “[t]he right of the people

 to be secure in their persons . . . against unreasonable searches and seizures” by the

 government. U.S. Const. amend. IV. Preventing law enforcement officers and other

 government officials from acting unlawfully is “[t]he point of the Fourth

 Amendment.” Johnson v. United States, 333 U.S. 10, 13 (1948). The State could have

 presented evidence to support its assertion that SBM promotes its legitimate

 governmental interest in preventing sex offenders from reoffending. It did not. That

 should end our inquiry. Yet rather than hold the State to this very much

 surmountable burden, the majority excuses the State’s inability or unwillingness to

 present any evidence demonstrating that SBM helps deter recidivism and instead

 invents a new test: a warrantless, suspicionless search is reasonable when the State

 says it is. The danger for abuse should be self-evident.
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 D. The majority’s flagrant disregard for precedent.

¶ 68 Finally, the majority has adopted numerous arguments advanced in the

 dissenting opinion in Grady III which the majority in that case rejected. Key factual

 and legal conclusions established in Grady III have been turned upside down.

 Without acknowledgment, the majority proceeds as if the dissent in Grady III controls

 in analyzing the constitutionality of a lifetime SBM order under the Fourth

 Amendment.9 The majority’s refusal to adhere to precedent is inconsistent with this

 Court’s longstanding respect for the doctrine of stare decisis, creates unnecessary and

 inexplicable fissures in our Fourth Amendment jurisprudence, and threatens this

 Court’s legitimacy.

¶ 69 On numerous occasions, the majority opinion in this case discards legal

 principles articulated by the majority in Grady III which plainly apply in examining

 any offender’s challenge to an order imposing lifetime SBM, including Mr. Hilton’s.

 For example, in Grady III, we explained that “[i]n addressing the search’s ‘intrusion

 on the individual’s Fourth Amendment interests,’ ‘[t]he first factor to be considered is

 the nature of the privacy interest upon which the search here at issue intrudes,’ or,

 in other words, ‘the scope of the legitimate expectation of privacy at issue.’ ” Grady

 9 To be sure, the majority does not expressly or impliedly overrule Grady III. Thus, its

 holding that it is unconstitutional under the Fourth Amendment to require certain offenders
 to enroll in lifetime SBM remains binding precedent, at least with respect to the category of
 offenders addressed in that case.
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 III, 372 N.C. at 527 (second alteration in original) (emphasis added) (quoting

 Vernonia, 515 U.S. at 652–54, 658). Now, the majority decides instead that “[t]he

 first step of our reasonableness inquiry under the totality of the circumstances

 requires analyzing the legitimacy of the State’s interest.”

¶ 70 In assessing the State’s interest in Grady III, this Court held that “the extent

 of a problem justifying the need for a warrantless search cannot simply be assumed;

 instead, the existence of the problem and the efficacy of the solution need to be

 demonstrated by the government.” Id. at 540–41. We explicitly rejected the argument

 that “we must defer to . . . legislative findings concerning the significance of the

 problem the SBM program is intended to address and the risk of sex offenders re-

 offending as codified at N.C.G.S. § 14-208.5 (stating the ‘Purpose’ of Article 27A)

 despite the absence of any record evidence supporting the State’s position.” Id. at

 541–42. We found an inconsistency between the record evidence in that case and the

 relevant legislative findings and further noted that the referenced “findings” related

 to the sex offender registry, not the SBM program. Id. Today, the majority relies on

 the exact same legislative statement of purpose to support the factual conclusion that

 sex offenders pose a high risk of reoffending.

¶ 71 A central question in the constitutional analysis and one that should be of

 concern to all is whether the SBM program actually accomplishes the purposes it is

 intended to achieve. On this fundamental issue of efficacy, in Grady III this Court
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 again explicitly rejected the position now adopted by the majority that the program’s

 deterrent effect is self-evident. See Id. at 543–44 (“[T]he State has not presented any

 evidence demonstrating that the SBM program is effective at deterring crime. . . . We

 cannot simply assume that the program serves its goals and purposes . . . .”).

¶ 72 Another example of the majority’s abandonment of Grady III when conducting

 the balancing required under the Fourth Amendment’s reasonableness inquiry is its

 characterization of the intrusiveness of the search SBM effectuates. In Grady III, this

 Court explicitly rejected the State’s argument that “[t]he physical intrusion here is

 minimal,” id. at 536 (alteration in original), concluding instead that the physical

 intrusiveness of SBM is both distinct in nature from the requirements of the sex

 offender registry and substantial, id. at 537. We stated that “[w]e cannot agree with

 the Court of Appeals that these physical restrictions, [like charging the ankle

 monitoring device,] which require defendant to be tethered to a wall for what amounts

 to one month out of every year, are ‘more inconvenient that intrusive.’ ” Id. at 535–

 36 (footnote omitted) (quoting State v. Grady, 259 N.C. App. 664, 672 (2018)). Today,

 the Court holds, directly contra Grady III, that “[t]hese physical limitations are more

 inconvenient than intrusive and do not materially invade an aggravated offender’s

 diminished privacy expectations.” SBM technology has not changed. The requirement

 that the person wearing an ankle monitoring device must be tethered to the wall for

 two hours a day to charge the battery has not changed. The fact that an audible sound
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 is emitted when voice commands are made has not changed. And there is no

 difference in the level of intrusiveness of SBM for an individual who is a recidivist as

 compared to an aggravated offender.

¶ 73 On the question of whether a court order to enroll in lifetime SBM is easily

 terminated, the Grady III Court examined the significance of the fact that North

 Carolina law provides for review by the Post-Release Supervision and Parole

 Commission and found several practical and constitutional problems with this

 purported remedy. Id. at 534–35, 534 n.16. We noted that from 2010 through 2015

 the Commission received only sixteen requests for termination by individuals subject

 to lifetime SBM and denied all of them. Id. at 535. The majority now makes the

 completely unsupported factual assumptions that “the aggravated offender category

 applies only to a small subset of individuals” and that while the statute refers to

 “lifetime” monitoring, termination is practically available after one year.

¶ 74 Similarly, with regard to Mr. Hilton’s state constitutional claim, the majority

 relies upon reasoning rejected by the United States Supreme Court and by this Court

 in the Grady cases. The majority concludes that an order imposing mandatory

 lifetime SBM is not a general warrant, and is thus constitutional, because SBM only

 provides information about a person’s location. Yet this requires embracing a

 characterization of the SBM program as not actually effectuating a constitutional

 search—a characterization the United States Supreme Court unanimously overruled
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 in a per curiam opinion. The majority’s fact-free, tautological reasoning has the effect

 of nullifying any meaningful judicial review of claims arising under Article I, Section

 20 of the North Carolina Constitution altogether.

¶ 75 I could go on. But proceeding issue by issue to examine all the ways in which

 this Court is now disavowing Grady III, without acknowledging what it is doing or

 even trying to justify its norm-breaking opinion, risks missing the forest for the trees.

 Nothing about SBM or the Fourth Amendment has changed between our decision in

 Grady III and the decision today. The only thing that has changed is the composition

 of the Court.

¶ 76 In refusing to adhere to Grady III, the majority ignores the dozens of Court of

 Appeals decisions interpreting and applying Grady III’s logic in cases involving non-

 recidivists. See, e.g., State v. Perez, 854 S.E.2d 15, 21 (N.C. Ct. App. 2020) (“Since our

 Supreme Court’s holding in Grady III, this Court has applied the reasonableness

 analysis under the totality of the circumstances to non-recidivists in SBM appeals in

 accordance with Grady I.”); Gordon, 270 N.C. App. at 475–77 (applying the

 reasonableness analysis employed in Grady III to a defendant convicted of an

 aggravated offense and subject to lifetime SBM as a result); State v. Griffin, 270 N.C.

 App. 98, 106 (2020) (“Grady III offers guidance as to what factors to consider in

 determining whether SBM is reasonable under the totality of the circumstances.”),

 review allowed, writ allowed, 854 S.E.2d 586 (N.C. 2021); Jackson, 2020 WL 2847885,
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 at *16 (“Defendant is an aggravated offender subject to mandatory lifetime SBM

 following his release from incarceration, placing his circumstances outside of the

 limited facial holding of Grady III. Accordingly, as we did in Griffin . . . , we employ

 Grady III as a roadmap . . . .”). This Court is not bound by Court of Appeals decisions,

 but the majority’s failure to explain why Grady III is inapposite in a case applying

 Fourth Amendment principles to examine the constitutionality of a lifetime SBM

 order—contrary to the reasoning of every Court of Appeals panel which has

 considered the very same question—is inexcusable.10

¶ 77 Ostensibly, our Court adheres to the doctrine of stare decisis. See, e.g., In re

 T.A.M., 2021-NCSC-77, ¶ 61 (Ervin, J. dissenting) (“[T]hose who disagree with an

 earlier decision are expected to continue to adhere to it unless and until it is

 overruled.”). “This Court has always attached great importance to the doctrine

 of stare decisis, both out of respect for the opinions of our predecessors and because it

 promotes stability in the law and uniformity in its application.” Wiles v. Welparnel

 Constr. Co., 295 N.C. 81, 85 (1978). Indeed, respect for our own precedents is

 necessary for us to remain faithful to the rule of law.

 10 The majority states that Grady III “has no bearing on cases where lifetime SBM is

 imposed on sexually violent offenders, aggravated offenders, or adult-child offenders” because
 the decision was limited to a narrow class of recidivists. But the majority does little to explain
 the distinction between recidivists and aggravated offenders which justifies discarding the
 reasoning we articulated in Grady III. Again, the Fourth Amendment and the SBM statutes
 which govern the lawfulness of subjecting an individual to lifetime SBM are the same for
 recidivists and aggravated offenders.
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 This rigorous standard for constitutional challenges
 ensures uniformity and predictability in the application of
 our constitution. State v. Emery, 224 N.C. 581, 584, 31
 S.E.2d 858, 861 (1944) (“[Constitutions] should receive a
 consistent and uniform construction . . . even though
 circumstances may have so changed as to render a different
 construction desirable.” (citing, inter alia, State ex rel.
 Att’y-Gen. v. Knight, 169 N.C. 333, 85 S.E. 418 (1915))); see
 also Bacon v. Lee, 353 N.C. 696, 712, 549 S.E.2d 840, 851–
 52 (“A primary goal of adjudicatory proceedings is the
 uniform application of law. In furtherance of this objective,
 courts generally consider themselves bound by prior
 precedent, i.e., the doctrine of stare decisis.” (citations
 omitted)), cert. denied, 533 U.S. 975, 122 S. Ct. 22, 150 L.
 Ed. 2d 804 (2001). Adhering to this fixed standard ensures
 that we remain true to the rule of law, the consistent
 interpretation and application of the law. State v. Bell, 184
 N.C. 701, 720, 115 S.E. 190, 199 (1922) (Stacy, J.,
 dissenting) (“[T]here must be some uniformity in judicial
 decisions . . . or else the law itself, the very chart by which
 we are sailing, will become as unstable and uncertain as
 the shifting sands of the sea . . . .”).

State ex rel. McCrory v. Berger, 368 N.C. 633, 651 (2016) (Newby, J., concurring in

part, dissenting in part) (alterations in original). “Our system of constitutional

adjudication depends upon a vast reservoir of respect for law and courts.” Archibald

Cox, The Warren Court: Constitutional Decision as an Instrument of Reform 25

(Harvard Univ. Press 1968). Public acceptance of the legitimate authority of judicial

decisions rests “at least partly upon the understanding that what the judge decides

is not simply his personal notion of what is desirable but the application of rules that

apply to all men equally, yesterday, today, and tomorrow.” Id. at 26. This Court’s

actions today threaten to drain that “reservoir of respect for law and courts.”
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

¶ 78 Of course, “stare decisis is ‘not an inexorable command.’ ” Janus v. Am. Fed’n

 of State, Cnty., & Mun. Emps., Council 31, 138 S. Ct. 2448, 2478 (2018) (quoting

 Pearson v. Callahan, 555 U.S. 223, 233 (2009)). On rare occasion, a Court will find it

 necessary to depart from the conclusions and reasoning it endorsed in its own prior

 decisions. Although this Court has not articulated factors to consider when examining

 the continued vitality of our precedents—perhaps because this Court has for so long

 respected the doctrine of stare decisis—the United States Supreme Court considers

 “the quality of [ ] reasoning [of the precedent being challenged], the workability of the

 rule it established, its consistency with other related decisions, developments since

 the decision was handed down, and reliance on the decision.” Id. at 2478–79.

¶ 79 In light of these factors, what is particularly troubling about the majority’s

 unwillingness to adhere to Grady III is that it comes in precisely the circumstances

 where respect for our precedent should be at its apex. Here, based upon a plausible

 reading of Grady III, the General Assembly expended significant time and energy to

 address the SBM program’s constitutional deficiencies. The constitutionality of a law

 was challenged. This Court ruled. The General Assembly responded. This is precisely

 how our system of constitutional adjudication and judicial review should proceed. Cf.

 Hilton v. S.C. Pub. Rys. Comm’n, 502 U.S. 197, 202 (1991) (“Stare decisis has added

 force when the legislature, in the public sphere . . . ha[s] acted in reliance on a

 previous decision, for in this instance overruling the decision would dislodge settled
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 rights and expectations or require an extensive legislative response.”). The majority

 should not ignore a precedent it does not like, in a circumstance where doing so is

 both unwarranted and, given the passage of S.L. 2021-138, completely unnecessary,

 absent a compelling reason or any identifiable reason at all.

¶ 80 A Court which discards its own precedents without explaining why it is doing

 so—which refuses to even admit what it is doing—is a Court which forfeits its claim

 to the special legitimacy the judiciary purports to derive from its capacity to reason

 and persuade. That is precisely what this Court does today. In “disregarding or

 distorting precedent as necessary to reach their desired result,” the majority flaunts

 its power and tells the public “ ‘C’est légal, parce que je le veux’ (‘It is legal because it

 is my will.’).” State v. Robinson, 375 N.C. 173, 193 (2020) (Newby, J., dissenting). The

 majority also signals to future litigants that the relevance of our decisions depends

 not upon any objective set of rules articulated by the Court, but rather upon the

 whims of its members. Whether or not one agrees with the outcome of Grady III or

 with the outcome of this case, the majority’s flagrant disregard for precedent and its

 unwillingness to own up to its actions should be alarming to anyone in North Carolina

 who cares about constitutional rights and the rule of law.

 III. Conclusion

¶ 81 It is important to not shy away from the facts of this particular case. Mr. Hilton

 was convicted of sexually abusing two minors. When he was released from prison
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 after serving a 12-year sentence, he violated a condition of his post-release

 supervision by traveling to Caldwell County without his probation officer’s

 permission. He was subsequently accused of sexually assaulting another minor

 during at least one of these unauthorized trips. Although the State’s testimony was

 extremely speculative, it is certainly possible that if the assault was not on his first

 trip and if the probation officer supervising Mr. Hilton had intervened after the first

 trip to stop Mr. Hilton from leaving Catawba County, then the second assault may

 have been avoided. Given the magnitude of the harm inflicted by individuals who

 commit aggravated sex offenses—and the frightening prospect of prior offenders

 reoffending upon their release from prison—it is tempting to allow the State to do

 pretty much whatever it wants in the name of deterring crime.

¶ 82 Yet without disputing the magnitude of the interest the State asserts to justify

 its imposition of SBM in this case, I cannot join the majority in its unqualified

 embrace of an application of SBM that is both unconstitutional and irreconcilable

 with recent precedents of this Court and the United States Supreme Court, in a case

 that has been significantly altered by the General Assembly’s substantial revision of

 the SBM program. I cannot join the majority in its decision to “shr[i]nk from declaring

 the truth” that the constitutions of North Carolina and the United States do not

 permit the State to intrude upon the privacy of its citizens merely because the

 legislature declares the intrusion wise. Stanmire v. Taylor, 48 N.C. 207, 211 (1855).
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

 Although of limited relevance, the majority opinion represents a grievous violation of

 our “solemn obligation” to enforce constitutional rights against State overreach. Id.

¶ 83 The practical result of the majority’s holding has been nullified because, as

 explained above, the law the majority purports to interpret will no longer exist after

 1 December 2021. Nevertheless, the majority’s reasoning is troubling. According to

 the majority, the State would be permitted to physically affix an electronic tracker to

 Mr. Hilton’s ankle and collect pinpoint location data from now until the day he dies,

 based solely upon his status as an aggravated offender, even after he has completed

 all terms of his criminal sentence. The majority may think this an effective way to

 prevent recidivism. It may very well be. But allowing the State to conduct an invasive,

 never-ending search of an individual’s person, without requiring the State to present

 any evidence that doing so in any way serves the interest the State advances to justify

 the search, makes a mockery of the constitutional rights which protect all North

 Carolinians. I disagree with the majority’s abandonment of the state and federal

 constitutions, its refusal to respect the Court and its precedents, and its abdication of

 our judicial role. If this Court believes it necessary to reach the merits of Mr. Hilton’s

 claim absent further briefing on the ramifications of S.L. 2021-138, I would affirm

 the decision of the Court of Appeals reversing in part the order imposing lifetime

 SBM on Mr. Hilton. Therefore, I dissent.

 Justice HUDSON and Justice ERVIN join in this dissenting opinion.
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

Appendix:

 Case Category Court of
 Appeals
 Disposition as
 to SBM
State v. Clemons, No. COA18-469, 2019 WL 6134546 Non-Recidivist SBM Order Held
(N.C. Ct. App. Nov. 19, 2019) (unpublished). Lifetime Unconstitutional
State v. Dravis, 269 N.C. App. 617 (2020). Lifetime SBM Order Held
 (unknown Unconstitutional
 category)
State v. Griffin, 270 N.C. App. 98 (2020), review 30 years SBM Order Held
allowed, writ allowed, 854 S.E.2d 586 (N.C. 2021). Unconstitutional
State v. Gordon, 270 N.C. App. 468 (2020), review Non-Recidivist SBM Order Held
allowed, writ allowed, 853 S.E.2d 148 (N.C. 2021). Lifetime Unconstitutional
State v. Graham, 270 N.C. App. 478, writ allowed, 845 Non-Recidivist Vacated and
S.E.2d 788 (N.C. 2020), review allowed in part, denied Lifetime Remanded
in part, 375 N.C. 272 (2020).
State v. Willis, No. COA18-507, 2020 WL 2126759 Recidivist SBM Order Held
(N.C. Ct. App. May 5, 2020) (unpublished). Lifetime Unconstitutional
State v. Ricks, 271 N.C. App. 348, writ allowed, 375 Non-Recidivist SBM Order
N.C. 281 (2020). Lifetime Vacated
State v. Jackson, No. COA18-1122, 2020 WL 2847885 Non-Recidivist SBM Order Held
(N.C. Ct. App. June 2, 2020) (unpublished), review Lifetime Unconstitutional
denied, 375 N.C. 494 (2020).
State v. Hutchens, 272 N.C. App. 156 (2020). Non-Recidivist SBM Order Held
 Lifetime Unconstitutional
State v. Tucker, 272 N.C. App. 223, writ denied, 843 Non-Recidivist SBM Order Held
S.E.2d 647 (N.C. 2020), review denied, 376 N.C. 546 Lifetime Unconstitutional
(2020).
State v. Springle, No. COA17-652-2, 2020 WL 4187312 Recidivist SBM Order Held
(N.C. Ct. App. July 21, 2020) (unpublished). Lifetime Unconstitutional
State v. Lindquist, 273 N.C. App. 163 (2020). Recidivist SBM Order
 Lifetime Vacated and
 Remanded
State v. Thompson, 273 N.C. App. 686 (2020). Non-Recidivist SBM Order Held
 Lifetime Unconstitutional
State v. Strudwick, 273 N.C. App. 676 (2020), writ Non-Recidivist SBM Order Held
allowed, 849 S.E.2d 296 (N.C. 2020). Lifetime Unconstitutional
State v. Ennis, No. COA19-896, 2020 WL 5902804 Non-Recidivist SBM Order
(N.C. Ct. App. Oct. 6, 2020) (unpublished), review Lifetime Vacated
denied, 851 S.E.2d 49 (N.C. 2020).
State v. Battle, No. COA19-677, 2020 WL 6140629 Non-Recidivist SBM Order
 STATE V. HILTON

 2021-NCSC-115

 Earls, J., dissenting

(N.C. Ct. App. Oct. 20, 2020) (unpublished). Lifetime Vacated
State v. Cooper, No. COA18-637-2, 2020 WL 6140636 Non-Recidivist SBM Order Held
(N.C. Ct. App. Oct. 20, 2020) (unpublished). Lifetime Unconstitutional
State v. Anthony, No. COA18-1118-2, 2020 WL Non-Recidivist SBM Order Held
6742712 (N.C. Ct. App. Nov. 17, 2020) (unpublished). Lifetime Unconstitutional
State v. Essary, No. COA19-917, 2020 WL 7038839 Non-Recidivist SBM Order
(N.C. Ct. App. Dec. 1, 2020) (unpublished), review Lifetime Vacated
denied, 376 N.C. 902 (2021).
State v. Harris, 854 S.E.2d 51 (N.C. Ct. App. 2020), Non-Recidivist SBM Order Held
writ allowed, 376 N.C. 679 (2021). Lifetime Unconstitutional
State v. Perez, 854 S.E.2d 15 (N.C. Ct. App. 2020). Non-Recidivist SBM Order Held
 Lifetime Unconstitutional
State v. Robinson, 854 S.E.2d 407 (N.C. Ct. App. 2020). Non-Recidivist SBM Order Held
 Lifetime Unconstitutional
State v. Westbrook, No. COA18-32-2, 2020 WL Recidivist SBM Order Held
7973944 (N.C. Ct. App. Dec. 31, 2020) (unpublished). Lifetime Unconstitutional
State v. White, No. COA18-39-2, 2020 WL 7974418 10 years SBM Order Held
(N.C. Ct. App. Dec. 31, 2020) (unpublished). Unconstitutional
State v. Clark, No. COA19-318, 2020 WL 7974412 Non-Recidivist SBM Order Held
(N.C. Ct. App. Dec. 31, 2020) (unpublished). Lifetime Unconstitutional
State v. Chaudoin, No. COA20-340, 2021 WL 1978943 Recidivist SBM Order
(N.C. Ct. App. May 18, 2021) (unpublished). Lifetime Vacated and
 Remanded
State v. Spinks, 2021-NCCOA-218. Recidivist SBM Order
 Lifetime Reversed in Part
 and Remanded
State v. Billings, 2021-NCCOA-306. Recidivist SBM Order
 Lifetime Vacated
State v. Barnes, 2021-NCCOA-304. Non-Recidivist SBM Order
 Lifetime Vacated and
 Remanded